In re DEAN FORD, INC., Debtor.

Paul H. ANDERSON, Jr., as Interim Trustee, Plaintiff,

v.

Harold Dean WARREN a/k/a Harold Dean, Nell Warren a/k/a Nell Hartwick, Alan E. Karsh, The University National Bank of Denver, The Republic National Bank, The First Interstate Bank of Denver, The United Bank of Denver, and The Central Bank of Denver, Defendants.

Bankruptcy No. 82–02224A.
Adv. No. 82–1621A.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Sept. 21, 1982.

Mitchell, Clarke, Pate, Anderson & Wimberley, Atlanta, Ga., for plaintiff.

Karsh & Fulton, P.C., Jack W. Berryhill, Edwin B. Fieman, James B. Holden, Denver, Colo., for defendants.

## ORDER

WILLIAM L. NORTON, Jr., Bankruptcy Judge.

This adversary proceeding against several defendants is before the Court on the motions of two of the defendant national banks to dismiss the complaint as it relates to them.

A bankruptcy petition was filed on May 7, 1982 to initiate this as an involuntary case under Chapter 7 of Title 11 U.S.C. Upon motion of the petitioning creditors, on May 27, 1982 the plaintiff in this adversary proceeding was appointed interim trustee pursuant to Bankruptcy Code Section 303(g) for the purpose of preserving property of and preventing loss to the estate. The involuntary petition was controverted by the debtor, but, after trial, an order for relief under Chapter 7 was entered against it on July 8, 1982.

The plaintiff interim trustee filed this adversary proceeding on June 25, 1982 against the debtor's president and vice president ("the Warrens" hereinafter), an attorney who had represented the debtor and its president, and five banks. The

verified complaint, as twice amended, alleges, *inter alia*, that the Warrens formed the debtor as a Georgia corporation on September 2, 1981 and the debtor commenced its franchise retail automobile sales business in January, 1982. It further alleges upon information and belief that within six weeks prior to the filing of the involuntary petition on May 7, 1982, defendant Warren misappropriated and converted to his own use as much as $600,000.00 of the debtor's money and other assets, transferred the misappropriated funds into the defendant banks and, with his wife, left the Atlanta, Georgia area, where the debtor had its sole place of business. It appears that four of the defendant banks are residents of Denver, Colorado, where the Warrens now reside, and the other is a resident of Dallas, Texas. As the amended complaint relates to the banks, it essentially seeks to enjoin them from transferring any property which they may have received from the Warrens or on account of either of them until the Warrens account fully as to the sources of the property and to require the banks to deliver to the plaintiff all property that may be shown in this adversary proceeding to be property of the bankruptcy estate. In the alternative, the plaintiff alleges that if Warren's withdrawal of funds from the debtor and transfers of those funds to the defendant banks was in payment of any legitimate debts owed by the debtor to Warren, the withdrawals and transfers are voidable preferences under Bankruptcy Code Section 547(b) for which the defendants are liable to the estate under Bankruptcy Code Section 550(a).

After proper notice and hearing, a temporary restraining order was entered on July 6, 1982 restraining the banks from transferring any property received from the Warrens of which the banks had possession and control on June 25, 1982.

Two of the banks, RepublicBank Dallas, N.A., formerly known as Republic National Bank ("RepublicBank" hereinafter) and University National Bank of Denver ("University National" hereinafter) timely filed motions to dismiss in response to the com-

plaint. Both motions are grounded upon a contention that, as to the movants, venue of this proceeding under Title 28 U.S.C. § 1473 is improper in light of the more specific venue provisions of the National Bank Act, 12 U.S.C. § 94. RepublicBank's motion further alleges that this Court lacks subject matter jurisdiction with respect to the issues made the basis of the amended complaint, lacks plenary jurisdiction with respect to these issues and lacks jurisdiction over its person, despite the provisions of Title 28 U.S.C. § 1471.

RepublicBank cites no authority in support of the jurisdictional ground of its motion. It is clear to this Court that the Bankruptcy Court has both subject matter jurisdiction and jurisdiction over the person of RepublicBank pursuant to Title 28 U.S.C. § 1471 at least until October 4, 1982. See *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).[1] See also the opinion of this Court in *Anderson v. CBS, Inc., (In re Trac·Record, Inc.)* 31 B.R. 161, 9 BCD 1011 (Bkrtcy.N.D.Ga., 1982).

■ On the venue question, the banks contend that under Title 12 U.S.C. § 94 actions against a national bank or banking association may be brought only in the county where the principal place of business of that bank or association is located. They point out that under Title 28 U.S.C. § 1348, all national banking associations are deemed citizens of the states in which they are respectively located for purposes of all actions by or against them other than by the United States. They argue that they do not conduct business in the state of Georgia. They cite unquestionable authority that, at least in the non-bankruptcy context, the venue provisions of Title 12 U.S.C. § 94 are not merely permissive but mandatory. See *National Bank of North Amer-*

*ica v. Associates of Obstetrics and Female Surgery, Inc.*, 425 U.S. 460, 96 S.Ct. 1632, 48 L.Ed.2d 92 (1976). University National argues that because venue is improper this adversary proceeding against it must be dismissed pursuant to Title 28 U.S.C. § 1406(a). RepublicBank argues that the proceeding against it should either be dismissed or transferred to an appropriate court in Dallas County, Texas.[2]

■ On this difficult venue question, the Court concludes that to the extent that it conflicts with Title 28 U.S.C. § 1471, Title 12 U.S.C. § 94 was repealed by the former, which is a later statute having exclusive application in bankruptcy cases under Article I, Section 8 of the Constitution, giving Congress the power to establish uniform laws on that subject throughout the United States. In doing so, it is not unmindful of the fact that at least four Bankruptcy Courts have reached the opposite conclusion. See *In re Associated Transport Inc.*, 3 B.R. 124 (Bkrtcy.S.D.N.Y.1980); *In re Malone*, 5 B.R. 658 (Bkrtcy.S.D.Cal.1980); *In re Dick & Co.*, 8 B.R. 358 (Bkrtcy.N.D. Ind.1980); *In re Neese*, 12 B.R. 968 (Bkrtcy.W.D.Va.1981).

■ It is true that, as the banks and the above-cited decisions point out, repeals by implication are not favored and may be found only where provisions in the two acts are in irreconcilable conflict or when the later act covers the whole subject of the earlier one and is clearly intended as a substitute. See *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976). However, repeal may be regarded as implied, to the minimum extent necessary, if necessary to make the later enacted law work. See *Radzanower v. Touche Ross & Co., supra*, at p. 155, 96 S.Ct. at p. 1993.

---

**1.** The claims stated by the complaint are based primarily upon Title 11 U.S.C. §§ 541, 542 and, alternatively, 547. They do not appear to be grounded upon state law.

**2.** Proceedings related to bankruptcy cases are not subject to dismissal for want of proper ven-

ue. The only options available to a Bankruptcy Court are retention of the proceeding or transfer to a Bankruptcy Court in another district. See 28 U.S.C. § 1477. See generally 1 *Collier on Bankruptcy* ¶ 3.02[2][c] (15th ed. 1982); 1 *Norton Bankr L & Prac* § 5.32, p. 38.

Congress' clear intent in enacting the Bankruptcy Reform Act of 1978, Pub.L. 95–598, 92 Stat. 2549 (Nov. 6, 1978), was to facilitate the convenient, expeditious and centralized handling of bankruptcy cases and related litigation. See 1 *Norton Bankr L & Prac* § 5.25 (1981). In Section 241(a), this Act set forth the provisions of Title 28 U.S.C. § 1471, which granted a broad, unitary jurisdiction upon the Bankruptcy Court. Legislative history amply evidences Congress' belief in a need for special venue rules in bankruptcy cases to compliment this expanded jurisdiction and to promote centralization of related litigation. "Subsection (a) of [Title 11 U.S.C. § 1473] specifies that with *two* exceptions, enumerated in subsections (b) and (d), the court in which the bankruptcy case is pending is *always* a proper venue for proceedings arising under Title 11 or arising under or relating to a case under Title 11." H.Rep. No. 95–595, p. 446, 95th Cong., 1st Sess. (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6402.[3] (Emphasis added.) The above was not quoted in any of the decisions cited above, and it does not appear that this legislative history, which plainly reflects the goal of centralization of bankruptcy related litigation, was considered.

This Court must conclude, therefore, that Congress did not intend to except national banks from the permissive venue provisions of the Bankruptcy Reform Act of 1978 and that for this Court to hold otherwise would necessarily frustrate the working of that Act.[4] See *Radzanower v. Touche Ross & Co., supra.*[5]

■ Even if venue were improper as to the movant banks, this Court would retain this proceeding against them pursuant to Title 28 U.S.C. § 1477(a) in the interest of justice and for the convenience of the parties. See *In re Neese, supra.* See generally 1 *Norton, supra,* § 5.32. See also 1 *Collier, supra,* ¶ 3.02[6][e]. Among the factors bearing on this question are the following: (1) The availability and cost of obtaining witnesses and other sources of proof, and the availability of compulsory process for witnesses; (2) The enforceability of a judgment by the court rendering the judgment; (3) Whether the action is one that should be tried in a local forum; (4) The probability of a fair trial in a local forum; and (5) The forum whose law will govern the action. See *In re Neese, supra.*

In this adversary proceeding, the plaintiff is the interim Chapter 7 trustee of the bankruptcy estate of a Georgia debtor corporation, the business of which was conducted exclusively in Georgia. As the proceeding involves the movant banks, the plaintiff seeks simply to establish that the president of the debtor unlawfully removed hundreds of thousands of dollars from the debtor's business within a few weeks before bankruptcy and transferred them to the banks in other states. He seeks to maintain the status quo until these funds can be traced, with the bank's voluntary or involuntary cooperation. The banks appar-

---

**3.** The banks do not claim to come under the exceptions of either 28 U.S.C. § 1473(b) or (d).

**4.** The Court does not reach the plaintiff's argument that this is essentially a proceeding to establish a constructive trust as to the funds in issue, to which the banks make no claim, and is therefore a purely local action, excepted from the venue provisions of 12 U.S.C. § 94 under the doctrine of *Casey v. Adams,* 102 U.S. 66, 26 L.Ed. 52 (1880).

**5.** It should be noted that the Supreme Court in *Radzanower* found that the legislative history of the Securities Acts, the venue provisions of which were under scrutiny in that case, did not indicate that Congress considered banks as likely defendants in actions brought under those

Acts. See *Radzanower v. Touche Ross & Co., supra,* at 426 U.S. 155, n. 11, at 96 S.Ct. 1994, n. 11. It cannot be imagined that Congress could have failed to contemplate that banks would be likely defendants in bankruptcy proceedings under the Bankruptcy Reform Act. This is especially true with regard to proceedings such as this one by a trustee to recover moneys allegedly misappropriated from a debtor shortly before bankruptcy. The incongruity of the bank's position with the clear congressional goal of centralization is brought into sharp focus when it is considered that had the funds in issue in this proceeding been deposited in money market trusts or federal savings and loan associations in Dallas and Denver rather than in national banks as alleged, no question of improper venue would be presented.

**8**

ently make no claim whatsoever to the funds. It would be extremely wasteful, inefficient and unwieldy to require under these circumstances that ancillary proceedings be maintained in Texas and Colorado in order to obtain this relief, and the delay consequent to such a requirement would likely make the goal of preserving the status quo for the benefit of the bankruptcy estate unattainable as a practical matter.[6]

As to convenience of the parties, it appears that all of the debtor's books and records are located in the Atlanta, Georgia area. Likewise, it appears that all known witnesses having knowledge of the debtor's financial affairs are located in Atlanta, except for certain accountants in Michigan and three officers of the debtor who left the Atlanta area under allegedly suspicious circumstances within ten days prior to the filing of the involuntary petition, two of whom are now residents of Denver, Colorado and named defendants in this proceeding who have admitted jurisdiction and venue in this Court. Witnesses having knowledge of the transactions involving the defendant banks are located in Atlanta, Denver, and Dallas. Such witnesses not available in this district may, of course, be examined by deposition.

The plaintiff has satisfactorily assured the Court that his purpose in maintaining this proceeding in this Court is not inconvenience to the banks but preservation of the property of the estate and the discovery of truth. Plaintiff served upon the banks with service copies of the complaint and summons interrogatories and requests to produce which, if properly responded to, should expedite the economical and just conclusion of this proceeding. The plaintiff has not requested that original bank records be removed from the banks' offices in Denver and Dallas but only that he be supplied copies of the limited records requested. He has consented to the banks' use of Dallas and Denver counsel to represent them in this proceeding, subject to the approval of the Court. In addition, he has offered to take every other reasonable step in this proceeding to minimize inconvenience and expense to the banks, including himself traveling to Dallas and Denver for more informal discovery should it become necessary.

In accordance with the above determinations, it is therefore

ORDERED that the motions of defendants RepublicBank Dallas, N.A. and University National Bank to dismiss or transfer be and hereby are denied.

**6.** It appears in this proceeding that there are no funds available to the plaintiff that are not claimed as collateral security in this case by one of the creditors and that therefore the plaintiff cannot conduct this proceeding in any other court or district.