Albert F. **THOMASSON**, et al, **Plaintiffs,**

v.

**AMSOUTH BANK, N.A., a national banking association, et al, Defendants.**

Civ. A. No. CV85–PT–2904–S.

United States District Court, N.D. Alabama, S.D.

April 2, 1986.

Report, Including Proposed Findings of Fact and Conclusions of Law Jan. 7, 1986.

J. Michael Rediker, and David R. Donaldson of Ritchie and Rediker, Birmingham, Ala., for plaintiffs.

Donald M. Wright, and Robert B. Rubin of Sirote, Permutt, Friend, Friedman, Held & Apolinsky, P.C., Birmingham, Ala., Tracy E. Friedman of Dotson, Babcock & Scofield, Houston, Tex., for defendant/Knostman.

David B. Anderson, William A. Ratliff, and William A. Robinson of Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, Ala., for defendant/AmSouth.

## MEMORANDUM OPINION

PROPST, District Judge.

This matter was sent to this court for a final order and review under 28 U.S.C. § 1334(c)(1) by the Honorable Clifford Fulford on the seventh day of January, 1986. This court referred this case back to Judge Fulford for his consideration of the trustee's Motion for Modification or Dissolution of the Temporary Restraining Order. This case is now back in this court for final review and order.

The facts giving rise to this action are briefly as follows. On June 5, 1984, Tom-

linson Interest, Inc. (Tomlinson) filed a Chapter 7 bankruptcy petition in the Houston Bankruptcy Court. Defendant Knostman was appointed Trustee on June 15, 1984. Tomlinson owned a 56% working interest in the Johns Field in Rankin County, Mississippi, and on February 5, 1985, Knostman was granted authority under section 721 of the Bankruptcy Code to engage in certain activities in Johns Field. Knostman had entered into a Joint Operating Agreement (JOA) with the non-operator working interest owners, including the plaintiffs who respectively own interests of 7.5%, 5%, and 6.25%, on January 21, 1985. The JOA was supplemented on February 7, 1985. Pursuant to this supplement, the plaintiffs directed AmSouth Bank to deliver to Knostman letters of credit (L's/C) upon which he could draw under the provisions of the JOA. Knostman's attempt to draw on the L's/C have led to this suit.

The plaintiffs allege in their complaint that they were fraudulently induced by Knostman's misrepresentations and omissions of material facts to issue their L's/C, and that the certifications made by Knostman in trying to draw on the L's/C were false and fraudulent. The plaintiff seeks an accounting (Count 1), a declaratory judgment (Count 2), a preliminary injunction (Count 3) and five million dollars (Count 4). The plaintiffs demanded a jury trial as to Count 4 and on the issues of fraud, improper purpose and motive, and misrepresentation under Count 3.

On October 31, 1985, the Circuit Court of Jefferson County entered a temporary restraining order that prevented AmSouth Bank from paying and Knostman from attempting to draw on the L's/C. The case was set for hearing on the preliminary injunction count in state court on December 2, 1985. However, this hearing never occurred because Knostman removed the case on November 5, 1985.

On plaintiff's motion, and by agreement of all parties, the temporary restraining order was extended by the Bankruptcy Court until December 12, 1985. It was then extended again by agreement until a final disposition had been made of the remand, abstention and transfer motions.

■ The first legal conclusion Judge Fulford makes is that the United States District Court for the Northern District of Alabama has jurisdiction over this case pursuant to 28 U.S.C. § 1334(b).[1] Section 1334(b) states:

> Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under Title 11, or arising in or related to cases under Title 11.

Disputes that are "arising under Title 11" or "arising in ... case under Title 11" are called "core proceedings."[2] *See Zweygardt v. Colorado National Bank of Denver,* 52 B.R. 229, 231 (Bankr.D.Colo.1985). "Core proceedings" encompass "those proceedings which would not exist at law in the absence of the Bankruptcy Code." *Cameron v. Anderson (In re American Energy, Inc.),* 50 B.R. 175, 178 (Bankr.D.N. D.1985). As pointed out in *Zweygardt,* the meanings of "arising in" and "arising under" are unclear. *Zweygardt,* 52 B.R. at 231–232. This court has no wish to stir up the already muddy water that surround these two phrases. Since this court agrees with the Bankruptcy Court that it has "related to" jurisdiction, it is not necessary to comment on the correctness of the Bank-

---

1. The Bankruptcy Judge also found that this court did not have jurisdiction under § 1334(a) —"original and exclusive jurisdiction of all cases under Title 11"—or 1334(d)—"exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of the estate." This finding is correct.

2. Whether a proceeding arising in a case under Title 11 is a "core proceeding" is not clear. For example, in this case, the Bankruptcy Judge, on page 14, note 6 of this report, states that even though the present case is a proceeding arising in a case under Title 11, it is not a "core proceeding."

ruptcy Judge's finding of "arising in" jurisdiction.

Unfortunately, there is no clear definition of "related to" jurisdiction, but upon reading *Zweygardt; In re American Energy, Inc.; National Acceptance Company of America v. Price (Matter of Colorado Energy Supply, Inc.)* 728 F.2d 1283 (10th Cir.1984); and other related cases, this court is satisfied that this case is sufficiently related to the Houston bankruptcy proceedings to support jurisdiction under 28 U.S.C. § 1334(b). As pointed out by the Bankruptcy Judge, "if damages are awarded to the Plaintiffs, or if Knostman is denied his claimed right to draw on the L's/C, there will be an impact on the bankruptcy case in Houston." *See* Bankruptcy Judge's Report, dated January 7, 1986. This "impact," coupled with the fact that the trustee entered into the post-petition transactions that have given rise to the present action against him in his capacity as trustee of the debtor, is enough support "related to" jurisdiction under 28 U.S.C. § 1334(b).

This court also agrees with the Bankruptcy Court that the abstention doctrine need not be considered in this case. Since, this court has decided to remand this case, it is not necessary to consider the abstention issue directly.

 The trustee would like for this court to transfer this case to the United States Bankruptcy Court for the Southern District of Texas, Houston Division (Houston Bankruptcy Court). Under 28 U.S.C. § 1412, this court can transfer this case "in the interest of justice *or* for the convenience of the parties." (emphasis added). As pointed out by the Bankruptcy Court, the word "and" in old section 1475 was changed to "or" in section 1412. This change should make it easier to meet the requirements necessary for transfer. Factors that should be considered in deciding whether to transfer a case are the convenience of witnesses, the parties' access to proof, the ability to receive a fair trial, and judicial efficiency. *See In re Legend Industries, Inc.*, 49 B.R. 935, 938 (Bankr.E.D.N.Y.1985). *See also, In re Butcher*, 46 B.R. 109, 112 (Bankr.N.D.Ga. 1985) ("The most important factor is whether the transfer of the proceeding would promote the economic and efficient administration of the estate.").[3] Also, the burden of proving appropriateness of transfer of venue of a bankruptcy case is on the party moving for the transfer. *Id.*

 In this case, the trustee has not met its burden. The convenience of the witnesses factor weighs against the trustee. Since this case involves letters of credit from an Alabama bank, this court assumes that many of the witnesses will be from Alabama. The plaintiffs and AmSouth Bank are from Alabama. The trustee is not from Alabama, but the trustee has chosen to deal with Alabama citizens and corporations. In light of this, this court finds that the convenience of witnesses factor weighs against transfer. The L's/C would be drawn on an Alabama bank, and the fraud, if committed, was against Alabama residents in Alabama. There is nothing to indicate that access to proof would be better in Houston than in Birmingham. If anything, this access would be better in Birmingham. There is also no indication that a fair trial cannot be held in either Alabama or Texas.[4] This being true, this factor does not weigh in favor of transfer.

The last and most important factor is that of judicial efficiency. The trustee argues that this factor weighs in favor of

---

**3.** The court notes that the *Butcher* case lists factors to be considered in determining whether a transfer would be for the convenience of the parties. While this list would be applicable to the facts in *Butcher,* this court fails to see how some of the factors would be relevant to this case. For example, the proximity of creditors to the court should not be a factor in the court's decision because the creditors' interest in this case is indirect, at best. The *Legend Industries* factors are better suited to this case and the court will apply those factors.

**4.** The court views this factor as coming under the "interest of justice" portion of section 1412. This court is confident that justice can be found in both Alabama and Texas.

transfer. The basis for this argument is that the Houston Bankruptcy Court is already dealing with Tomlinson Interests' estate and that it is already familiar with this case in that the Houston Bankruptcy Court granted Knostman the authority to enter into the JOA. Also, the trustee points out that litigation in Alabama will be more expensive for the trustee than litigation in Houston. While this court agrees that these factors weigh in favor of transfer, there are also several factors that weigh against transfer. First, at least a portion of the law to be applied in this case is Alabama law. Courts situated in Alabama, whether state or federal, will be more familiar with Alabama law than the Houston Bankruptcy Court, and this should make a judicial proceeding more efficient in Alabama. There is no indicated application of Texas law. Second, the Circuit Court of Jefferson County has already dealt with the substantive issues in this case when it issued the temporary restraining order on October 31, 1985. The Houston Bankruptcy Court has not had occasion to deal with the fraud issue in this case. It would be more judicially efficient to remand this case to the state court than to transfer the case to Houston because of this prior exposure. Third, since the plaintiffs have demanded a jury trial and the Houston Bankruptcy Court might not be able to meet this demand, it would not promote judicial efficiency to transfer this case. *See In re L.A. Clarke and Son, Inc.,* 51 B.R. 31 (Bankr.D. D.C.1985); *In re Bokum Resources Corp.,* 49 B.R. 854 (Bankr.D.N.M.1985). Last, if this court does not transfer this case, the potential conflict as to venue with respect to AmSouth Bank will be avoided. *Compare* 12 U.S.C. § 94 and 28 U.S.C. § 1409. *See Matter of Chuck Harrison Dodge, Inc.,* 49 B.R. 381 (Bankr.W.D.Pa.1985); *In re James Paul Neese,* 12 B.R. 968, 971 (Bankr.W.D.Va.1981). *But see, In re Dean Ford, Inc.,* 38 B.R. 4, 6 (Bankr.N.D.Ga. 1982).

After weighing all of the above factors together, this court concludes that the transfer of this case to the Houston Bankruptcy Court would not be appropriate.

Not only has the trustee failed to carry his burden on this issue, this court is convinced that both the interest of justice and the convenience of the parties will be better served in Alabama than in Houston.

■ Both the plaintiffs and AmSouth would like this case to be remanded to the Circuit Court of Jefferson County. This case was removed pursuant to 28 U.S.C. § 1452(a). Section 1452(b) of Title 28 states:

> The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise.

Equitable grounds include: (1) forum non conveniens; (2) a holding that, if the civil action has been bifurcated by removal, the entire action should be tried in the same court; (3) a holding that a state court is better able to respond to questions involving state law; (4) expertise of the particular court; (5) duplicative and uneconomic effort of judicial resources in two forums; (6) prejudice to the involuntarily removed parties; (7) comity considerations; and (8) a lessened possibility of an inconsistent result. *See Browning v. Navarro,* 743 F.2d 1069, 1076 n. 21 (5th Cir.1984).

■ This court is of the opinion that the ends of justice might be better served if this case is remanded to the state court (this being a consideration of forum non conveniens). As discussed before, the state court has already dealt with the merits of this lawsuit when it granted the temporary restraining order. This court has only dealt with the procedural aspects in this case. Therefore, the state court has a "head start" on the merits of this matter which should enable the state court to resolve this matter faster than it could be resolved in this court. This "head start," however, is only a small head start that by itself would not merit remanding this case.

In addition, there is the consideration of comity which weighs in favor of remanding

this case. The addition of comity would still not be enough to tip the scales of equity in favor of remanding this case without help from the abstention doctrine. Although this court has found that it is not necessary to directly consider abstention (and there is some question whether the mandatory abstention would be applicable in this case),[5] the congressional mandate of abstention in certain "related to" cases enhances the importance of comity as an equitable ground for remand.

Section 1334(c) of Title 28 states:

(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State Courts or respect for state law, from abstaining from hearing a particular proceeding arising under Title 11 or arising in or related to a case under Title 11. (2) Upon timely motion of a party in a proceeding based upon a state law claim or state law cause of action, related to a case under Title 11 but not arising under Title 11 or arising in a case under Title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction....

This court views this section as establishing a Congressional preference for abstention in proceeding like the one at bar. The present case is based upon Alabama law on fraud and misrepresentation. This case could not have been brought in federal court absent jurisdiction under § 1334(b).

Thus, unless this case is before this court under "arising in" jurisdiction, this court would have to abstain under § 1334(c)(2). Assuming that this court has "arising in" jurisdiction, this court can still follow the Congressional policy set out in § 1334(c) by remanding this case. The court interprets this policy as directing federal courts to allow state courts to hearing state law matters when the only basis for federal jurisdiction is § 1334(b). This policy is closely related to comity and this tips the scales of equity in favor of remanding this case. The court generally adopts the well stated and reasoned Findings of Fact and Conclusions of Law proposed by the Bankruptcy Judge and will enter an appropriate order.

## REPORT, INCLUDING PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

CLIFFORD FULFORD, Bankruptcy Judge.

Plaintiffs, Alabama residents, filed a complaint in the Circuit Court of Jefferson County, Alabama (the "Alabama Court") against AmSouth Bank, N.A., of Birmingham, Alabama, and Gary J. Knostman, as Trustee of Tomlinson Interests, Inc., a Chapter 7 Debtor in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Houston Bankruptcy Court").[1] Knostman removed the case to the United States District Court for the Northern District of Alabama (the "Birmingham District Court") which referred it to this Court (the "Birmingham Bankruptcy Court"). Knostman filed a motion to transfer the action to the United

---

5. The Bankruptcy Court found that this case is a proceeding "arising in a case under title 11" and therefore was excluded from the mandatory abstention provisions of 28 U.S.C. § 1334(c)(2). Although this court has not decided whether the Bankruptcy Court was correct in its findings of "arising in" jurisdiction, it is not necessary to so decide because this case must be remanded for equitable reasons.

1. Plaintiffs' Alabama Court complaint, filed on October 31, 1985, denotes Plaintiff Burgess A. Thomasson as a resident of Florida; however,

Plaintiff Albert F. Thomasson's affidavit of November 20, 1985, states that both he and Burgess A. Thomasson are Alabama residents.

McMillan Limited is an Alabama limited partnership with its principal place of business in Alabama. AmSouth Bank, N.A., is a national banking association whose principal place of business is in Alabama.

The Debtor, Tomlinson Interests, Inc., is a Texas corporation. Gary J. Knostman is Trustee of the Debtor's bankruptcy estate. In any event, there is no diversity jurisdiction.

States District Court for the Southern District of Texas, Houston Division (the "Houston District Court").

The Plaintiffs moved to remand the case to the Alabama Court, or in the alternative, for abstention.

AmSouth Bank is aligned with the Plaintiffs in seeking remand or abstention, and in opposing transfer to the Houston District Court.

On June 5, 1984, Tomlinson Interests, Inc., involved in oil and gas exploration and production, filed a Chapter 7 bankruptcy petition in the Houston Bankruptcy Court (No. 84–03173–H2–4). Knostman was appointed Trustee on June 15, 1984. On February 5, 1985, he was granted authority under section 721 of the Bankruptcy Code to engage in certain activities in the Johns Field in Rankin County, Mississippi, in which the Debtor owned a 56% working interest. In this connection, Knostman entered into a Joint Operating Agreement ("JOA") dated January 21, 1985, and supplemented on February 7, 1985, with the non-operator working interest owners, including the Plaintiffs who respectively own interests of 7.5%, 5% and 6.25%. Pursuant to the supplement to the JOA, Plaintiffs had AmSouth Bank deliver to Knostman, the Operator, letters of credit ("L/Cs") upon which he could draw under the provisions of the supplement to the JOA. Knostman's efforts to draw on the L/Cs led to the suit in the Alabama Court.

The Plaintiffs allege in their Complaint that they were fraudulently induced by Knostman's misrepresentations and omissions of material facts to issue their L/Cs, and that the certifications made by Knostman in trying to draw on the L/Cs were false and fraudulent. The Plaintiff's Complaint is verified and consists of four counts as follows:

*Count I* seeks an accounting from Knostman allegedly required by the JOA as supplemented before making or receiving payment of any draft upon the L/Cs;

*Count II* asks for a declaratory judgment that Knostman is not entitled to draw on the L/Cs;

*Count III* prays for a temporary restraining order enjoining AmSouth Bank from honoring, and Knostman from making, further efforts to draw on the L/Cs; and a like preliminary injunction until Knostman has rendered an accounting and a final hearing has occurred; and

*Count IV* asks for $5,000,000 plus interest, costs, and punitive damages against Knostman, and others to be added by amendment, for their alleged misconduct and breaches of duty.

The Complaint includes a jury demand as to Count IV and the issues of fraud and misrepresentation in Count III.

On October 31, 1985, the State Court entered a temporary restraining order preventing AmSouth Bank from paying and Knostman from attempting to draw on the L/Cs. After a delay for Knostman to produce documents, the case was set for hearing on preliminary injunction in the State Court on December 2, 1985. Knostman's removal of the case on November 5, 1985, intervened before the case could be heard.

On Plaintiffs' motion, and by agreement of all parties, the temporary restraining order was first extended by this Court until December 12, 1985. It was then extended again by agreement until a final disposition has been made of the remand, abstention and transfer motions presently before the Court, subject to the rights of all parties to petition the Court for a modification or dissolution of the temporary restraining order.

## I. Does the Birmingham District Court have jurisdiction of this case?

In the part here pertinent, 28 U.S.C. § 1452(a) provides that "A party may remove any claim or cause of action in a civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." Section 1334 gives the district courts

"original and exclusive jurisdiction of all cases under title 11" [subsection (a)]; "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11" [subsection (b)]; and "exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of the estate." [subsection (d)].

Plaintiffs and AmSouth Bank contend that the Complaint is not within any of these jurisdictional grants, and that the case is therefore not subject to removal from the State Court under section 1452(a).

The Complaint does not state a case under title 11. Only the case initiated by the original bankruptcy petition filed in Houston qualifies as such under section 1334(a). *See In re American Energy, Inc.,* 50 B.R. 175, 178 (Bkrtcy.D.N.D.1985). Neither can jurisdiction be found under section 1334(d). Knostman acquired whatever rights he claims in the L/Cs after the Debtor filed its petition in Houston.[2]

This Court agrees with Knostman, however, that Plaintiffs' case is a civil proceeding arising in or related to Debtor's case under title 11.[3] The Complaint is at least

---

**2.** A letter of credit is an "engagement by a bank or other person made at the request of a customer ... that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit." *Code of Alabama,* 1975, § 7–5–103(1)(a). This square peg does not fit easily into any of the round holes of what constitutes property of a bankruptcy estate within 11 U.S.C. § 541(a) or what is excluded under section 541(b). The deciding factor may be "whether or not the letters outstanding in the hands of third parties are or are not secured by properties of the bankrupt." *Matter of Twist Cap, Inc.,* 1 B.R. 284, 285 (Bkrtcy.S.D.Fla.1979), rejecting *In re Marine Distributors, Inc. v. Smith,* 522 F.2d 791 (9th Cir.1975), which held there was no summary jurisdiction over letters of credit.

Some courts have criticized *Twist Cap* and have held that letters of credit and their proceeds are not property of a bankruptcy estate within the meaning of 11 U.S.C. § 541. *In re Elegant Merchandising, Inc.,* 41 B.R. 398 (Bkrtcy.S.D.N.Y.1984); *In re Page,* 18 B.R. 713, 714–716 (D.D.C.1982) which held that a letter of credit and its proceeds are property of the bank; and *In re Illinois-California Exp., Inc.,* 50 B.R. 232 (Bkrtcy.D.Colo.1985), where the Court wrote, "the overwhelming authority of the law after *Matter of Twist Cap, Inc.* ... indicates that a letter of credit and its proceeds are not property of the estate within the meaning of 11 U.S.C. § 541...." *Id.* at 234–235 citing *In re Elegant Merchandising, Inc.*

Notwithstanding the above, these AmSouth L/Cs fall short of being property of the estate for purposes of 28 U.S.C. § 1334(d) as they are, if anything, postpetition assets which had not come into existence "as of the commencement ... of the case."

**3.** Case law and commentary translating *arising in* and *related to* explain the difficulty of defining these terms and applying them to facts.

One commentary suggests that proceedings *arising in* a case under title 11 might include:

civil proceedings commenced by parties in interest during a bankruptcy case which are brought pursuant to statutory or other authority other than title 11. An antitrust or securities action brought by the trustee or debtor-in-possession during a Chapter 11 case based upon events which occurred after the filing of the petition might be a proceeding "arising in" a case under title 11. An action brought by the trustee or debtor-in-possession based upon pre-petition events might also be deemed to "arise in" the bankruptcy case although it might also be said to have "arisen under" title 11 because the action would be brought by the trustee or debtor-in-possession as a successor in interest under the Code to the debtor's pre-petition causes of action.

Reed, Sagar and Granoff, *Subject Matter Jurisdiction, Abstention and Removal Under the New Federal Bankruptcy Law,* 56 AM.BANKR.L.J. 121, 129 (1982).

Bankruptcy Judge Jay Gueck offers some solace for the bewildered inquirer. He writes in *Zweygardt v. Colorado Nat. Bank of Denver:*

The meaning of "arising in" a bankruptcy case is ... unclear. Congress did not say every proceeding filed in a title 11 case may be heard and determined by a bankruptcy judge. The statute does provide that a "core proceeding" ... arising in a bankruptcy case referred to the bankruptcy judge may be heard and determined by that judge. It is overly simplistic to merely examine an action filed in a title 11 case to see if it falls within 28 U.S.C. § 157(b)(2)(A) through (O). A literal implementation of those subsections would cause almost any proceeding filed in a bankruptcy case to come within the definition of "arising in." Thus, the issues should be examined to see if they deal with property of the estate in the underlying bankruptcy case and have arisen in that context. *See In re Dr. C. Huff Company, Inc.,* [44 B.R. 129 (Bkrtcy.W.D. Ky.1984)].

*Id.* at 52 B.R. 229, 232 (Bkrtcy.D.Colo.1985). In other words, a proceeding *arising in* a case

related to the bankruptcy case pending in Houston to which it has a significant connection. If damages are awarded to Plaintiffs, or if Knostman is denied his claimed right to draw on the L/Cs, there will be an impact on the bankruptcy case in Houston.[4]

under title 11 may be "the type of claim or proceeding that secondarily springs from a pending case which arose under title 11." *In re American Energy, Inc.,* 50 B.R. 175, 178 (Bkrtcy. D.N.D.1985). *See also In re L.A. Clark and Sons, Inc.,* 51 B.R. 31 (Bkrtcy.D.C.1985).

Compared to the opaque character of *arising in, related to* is at least translucent. Two prominent definitions are frequently cited and two tests have evolved. Chief Justice Burger describes a related proceeding as a "'traditional' state common law action, not made subject to a federal rule of decision, and related only peripherally to an adjudication of bankruptcy under federal law...." *Northern Pipeline Constr. Co. v. Marathon Pipeline Co.* 458 U.S. 50, 92, 102 S.Ct. 2858, 2882, 73 L.Ed.2d 598 (1982) (Burger, C.J., dissenting). The Interim Operating Rule, in effect after *Northern Pipeline* but before the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, 98 Stat. 333 (codified at 28 U.S.C. § 151 *et seq.* and 11 U.S.C. § 101 *et seq.*), defined related proceedings as "civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or state court.... Related proceedings do not include: contested and uncontested matters concerning the administration of the estate; allowance of and objection to claims against the estate...." *See Matter of Colorado Energy Supply, Inc.,* 728 F.2d 1283 (10th Cir. 1984). (Omission in original.)

Flowing from these definitions, but not necessarily based on them, the two tests to determine whether a proceeding is *related to* a case under title 11 are: (1) a restrictive test which requires that the property of the estate *will be* affected by the civil proceeding; and (2) a liberal test which only requires that the outcome of the civil proceeding could conceivably have *any effect* on the bankruptcy estate. The variation which results from the application of these tests is predictable.

For example, under the restrictive test, jurisdiction did not exist in *United Coal Co. v. Hoyer,* 29 B.R. 1019 (Bkrtcy.W.D.Va.1983), a postpetition action for defamation against attorneys for the debtor, even if the attorneys were agents of the debtor; *Kelley v. Salem Mortgage Co.,* 41 B.R. 420 (Bkrtcy.E.D.Mich.1984), a state attorney general consumer action on behalf of borrowers who entered prepetition loan transactions arranged by the debtors; *Heagle v. Haug,* 19 B.R. 223 (Bkrtcy.D.Or.1982), a suit for a prepetition fraud against the debtor, and three co-defendants who were not in bankruptcy, held not to be a related proceeding as to the co-defendants. But jurisdiction did exist in these examples suggested by Judge Clive Bare, writing in *In Re Butcher,* 43 B.R. 513 (Bkrtcy.E.D.Tenn. 1984):

*In Re Brentano's, Inc.,* 27 B.R. 90 (Bankr.S.D. N.Y.1983) (lessor's suit [on a prepetition lease] against debtor's lease guarantor where grantor would have claim for indemnity against the debtor); *Otero Mills, Inc. v. Security Bank & Trust,* 25 B.R. 1018 (Bankr.D.N.M. 1982) (jurisdiction to enjoin collection of [prepetition] state court judgment against debtor's president where president was required under reorganization plan to contribute assets to debtor); *Peoples Banking Co. v. Hartley,* 16 B.R. 777 (Bankr.N.D.Ohio 1982) (foreclosure on [a prepetition] mortgage given by nondebtor defendants on property in which debtors had no interest to secure debtors' performance on promissory note).

Id. at 517; brackets added.

Under the liberal test, jurisdiction did not exist in: *In Re Bobroff,* 766 F.2d 797 (3rd Cir. 1985), a tort action by the Debtor for postpetition defamation and interference with contractual relations; and *Pacor v. Higgins,* 743 F.2d 984 (3rd Cir.1984), a prepetition claim against an asbestos supplier who impleaded the asbestos manufacturer which later filed for bankruptcy, held not to be a related proceeding as to the initial suit against the supplier.

But jurisdiction did exist in *Matter of Baldwin-United Corp.,* 52 B.R. 541 (Bkrtcy.S.D.Ohio 1985), where a chapter 11 debtor sued on a prepetition fraud claim for insurance company's failure to indemnify; *Matter of Boughton,* 49 B.R.312 (Bkrtcy.N.D.Ill.1985), a trustee suit against the Debtor's insurance for insuror's prepetition negligent and willful failure to accept injured plaintiff's offer to settle action against Debtor; *Steyhr Daimler Puch of America Corp. v. Pappas,* 35 B.R. 1001 (E.D.Va.1983), a creditor's suit against a solvent individual claiming that the debtor corporation was the alter ego of the solvent individual; and *In re Ms. Kipps, Inc.,* 34 B.R. 91 (Bkrtcy.S.D.N.Y.1983), a debtor's suit to stay a labor union from pursuing a suit in state court against the debtor's president for failure to make benefit contributions.

Although some of these *arising in* and *related to* cases were decided pursuant to 28 U.S.C. § 1471(b), the predecessor section to section 1334(b), the language of both are identical and the history of section 1471(b) and cases interpreting it are therefore instructive. *See Carlton v. BAWW, Inc.,* 751 F.2d 781 n. 7 (5th Cir.1985).

In any event, the exact label applied to this case is of no consequence for the pruposes of this Court's jurisdiction as long as it falls within 28 U.S.C. § 1334(b). *See Weaver v. Gillen,* 49 B.R. 70 (D.N.Y.1985).

4. On December 11, 1985, in open court, and after hearings on this matter were commenced, Plaintiffs' attorneys filed a voluntary dismissal and waiver of any damage claims they have

Also, within the meaning of section 1334(b), the Complaint is a civil proceeding arising in the Houston bankruptcy case because it complains of acts and omissions of Knostman as the trustee appointed by and operating Debtor's business under orders issued by the Houston Bankruptcy Court.

As either a civil proceeding arising in a case under title 11, or a civil proceeding related to a case under title 11, Plaintiffs' Complaint states a claim or cause of action in a civil action over which the district court is given jurisdiction by section 1334. It was therefore removable from the State Court under section 1452(a).

**II. What are the practical alternatives under the pending motions for remand, abstention and change of venue?**

First, the case may be remanded to the Alabama Court under 28 U.S.C. § 1452(b) "on any equitable ground". This is what Plaintiffs and AmSouth Bank want.

Second, it may be transferred to the Houston District Court "in the interest of justice or for the convenience of the parties". 28 U.S.C. § 1412. This is what Knostman wants.

Third, the Birmingham District Court has venue of Plaintiffs' civil action and could retain it and try it or refer it to the Birmingham Bankruptcy Court for findings of fact and conclusions of law. It would then be returned to the District Court for the entry of a final order or judgment. 28 U.S.C. § 1409(e) and § 157(c)(1). No one wants this.

Knostman removed the case to the Birmingham District Court because 28 U.S.C. § 1452(a) authorizes removal only "to the district court where such civil action is pending". Removal directly from the Alabama Court to the Houston District Court is not authorized. The Birmingham District Court is only a way station in Knostman's efforts to take the Plaintiffs' case to Houston where the bankruptcy case is pending.[5]

Without dispositive regard for the parties' preferences, trial by the Birmingham District Court, with or without reference to the Birmingham Bankruptcy Court, is the least favored alternative.

Abstention is not appropriate. If the case is remanded or transferred, abstention by the Birmingham District Court need not be considered. Abstention is to be exercised, if at all, by the court exercising bankruptcy jurisdiction to whom the substantive decision is committed. For the Birmingham District Court to abstain without remanding or transferring would leave the case suspended in a state of limbo unresponsive to the parties' concerns.

The only real alternatives are to remand the case to the Alabama Court or to transfer it to the Houston District Court.

**III. What is the role of the bankruptcy court in resolving whether to remand or transfer this case? Must the issue be finally resolved by the district court?**

Congress enacted 28 U.S.C. § 1334 in response to *Northern Pipeline Constr. Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), which established that "Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review." *Thomas v. Union Car-*

---

against the Debtor's estate but reserving their claims against Knostman individually and his sureties as Trustee. In practical effect, this is an amendment of the state court complaint. "Removeability of an action is to be determined as of the time the removal petition is filed *and* as of the time of the commencement of the state action (or, in the event of amendment of the plaintiffs' initial pleading or other voluntary act which made the action removable." *Hurt v. Cypress Bank,* 9 B.R. 749, 752 n. 3 (Bkrtcy.N.D. Ga.1981), citing 1A *Moore's Federal Practice,*

¶ 0.157[2], p. 155 (2nd ed.1979). (Emphasis added in original.) Consequently, this Court bases its decision on the State Court Complaint as filed, and has not considered the Plaintiffs' December 11, 1985 amendment.

5. *See* Reed, Sagar, and Granoff, *Subject Matter Jurisdiction, Abstention and Removal Under the New Federal Bankruptcy Law,* 56 AM.BANKR. L.J. 121, 138 n. 35 (1982), in which this aspect of removal before the 1984 amendments is discussed.

*bide Agr. Products Co.,* —— U.S. ——, 105 S.Ct. 3325, at 3334–3335, 87 L.Ed.2d 409 (1985). Old section 1471(c) of Title 28, U.S.C., was declared unconstitutional because it provided that the bankruptcy court would exercise all bankruptcy jurisdiction conferred by section 1471 on the district courts.

In new section 1334 of Title 28, U.S.C., Congress gave all bankruptcy jurisdiction to the district courts. It also permitted the district court to refer, subject to withdrawal, "any or all proceedings arising under title 11, or arising in or related to a case under title 11" to the bankruptcy judges for the district. 28 U.S.C. § 157(a) and (d). Under section 157(b)(1), bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11 or arising in a case under title 11, referred to them by the district court, and may enter appropriate orders and judgments, subject to review under section 158. Section 157(b)(2) is a non-exclusive list of core proceedings. The bankruptcy judge is required by section 157(b)(3) to determine whether a proceeding before him is a core proceeding or a proceeding otherwise related to a case under title 11. The bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11, but in such a case he only submits proposed findings of fact and conclusions of law to the district court who enters the final order or judgment "after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

Before the 1984 amendments, removal was made directly to the bankruptcy court which was also authorized to remand, 28 U.S.C. § 1478; and transfers were made by a bankruptcy court directly to a bankruptcy court for another district, 28 U.S.C. § 1475. In the 1984 amendments, section 1478 was replaced by new section 1452, and section 1475 was replaced by new section 1412. In both instances, the powers to remand and transfer, formerly given to the bankruptcy courts, were given to the district courts in language otherwise nearly identical to that of the replaced sections. *See In re Schuler,* 45 B.R. 684 (Bankr.D.N.D.1985), and *In re Long,* 43 B.R. 692 (Bkrtcy.N.D.Ohio 1984), with respect to removal.

By these amendments, Congress sought to remedy the constitutional infirmities that condemned the jurisdictional grants to bankruptcy courts in the Bankruptcy Reform Act of 1978.

Whether the substance of Plaintiffs' civil action is core or non-core is irrelevant to whether it should be remanded or transferred.[6] The dichotomy of core and non-core

---

**6.** The parties have contested whether the case presented by Plaintiff's Complaint is a core proceeding or a proceeding otherwise related to a case under title 11. Knostman contends that the case is a core proceeding under section 157(b)(2)(A) ("matters concerning the administration of the estate") and section 157(b)(2)(B) ("allowance or disallowance of claims against the estate").

It is possible to read section 157(b)(2)'s list of core proceedings, and especially those described in subdivisions (A) and (O), to include almost any civil case or proceeding touching on bankruptcy, however tangentially. Despite its omission of a number of obvious core proceedings (*see* Ginsberg, BANKRUPTCY, ¶ 1123 at 1035), section 157(b)(2) indicates Congress' intention to give bankruptcy judges jurisdictional latitude, within the constitutional limits imposed by *Northern Pipeline,* in any and all bankruptcy cases and proceedings referred to them by the district courts. Read in the light of *Northern Pipeline,* Plaintiffs' action is not a matter "concerning the administration of the estate" within the meaning of section 157(b)(2)(A). Neither does the Complaint suggest any prepetition claims against the bankruptcy estate. Plaintiffs' claims against Knostman for his alleged postpetition misconduct do not fall within the ambit of section 157(b)(2)(B)'s "allowance or disallowance of claims against the estate."

Plaintiffs have correctly pointed out that all issues raised by their Complaint involve questions of state law; that there is no diversity or federal question jurisdiction; that their action could not have been commenced in a federal court absent jurisdiction under section 1334; and that their claims are based entirely on Knostman's alleged postpetition fraud, a tort under Alabama law. Even though it is a proceeding arising in a case under title 11, it is not a core proceeding. It differs from *Northern*

found in section 157 addresses the *substantive* issues the bankruptcy judge can handle in the cases and proceedings referred to him and how he handles them. Remand and transfer are *procedural.* The 1984 amendments do not provide directly, one way or the other, whether the issues of remand and transfer may be referred by the district court to the bankruptcy judge, or if so, what the bankruptcy judge's role is with respect to them. Nonetheless, the all-inclusive nature of the language of section 157(a) appears to embrace these procedural motions:

> Each district court may provide that any or all cases under title 11 and *any or all proceedings* arising under title or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district. (Emphasis added.)

With due respect for the term of art gloss that "proceedings" has acquired in the substantive bankruptcy context, Congress' use of "any or all proceedings" in section 157(a) is a catchall that does not exclude remand and transfer.[7] This Court concludes that they are included as "a proceeding that is not a core proceeding but that is otherwise related to a case under title 11" which the district court may refer under section 157(a) and which the bankruptcy judge may

hear under section 157(c)(1). This requires the bankruptcy judge to submit findings of fact and conclusions of law to the district judge who enters the final order.

If the bankruptcy judge can make findings of fact and conclusions of law with respect to substantive issues in related proceedings, he should be permitted to render the same service to the district court on procedural issues in related proceedings in which the only decision is which court is to decide the substantive issues.

There is another compelling reason why the district court must decide the motion to remand. An order remanding or not remanding is not reviewable by appeal or otherwise. 28 U.S.C. § 1452(b). Only an Article III court can enter such a non-reviewable order.[8]

**IV. Matters to be considered in making the decision whether to remand or transfer.**

Section 1452 of Title 28, U.S.C., provides for the removal and remand of bankruptcy claims and causes of action and states in subsection (b) that "The court to which such claim or cause of action is removed may remand such claim or cause of action on *any equitable ground.*" (Emphasis supplied.)[9] We are not here concerned

---

*Pipeline* only in being brought against instead of by the trustee and in being a postpetition tort proceeding instead of a prepetition contract proceeding. These differences strengthen the conclusion that it is not a matter the bankruptcy court is authorized to hear and determine under section 157(b)(1). If section 157 has any relevance in deciding the motions to remand and transfer, it is to how the case would be handled if it were transferred to Houston.

**7.** *See* discussion of the use of the words "case" and "proceeding" at King, *Jurisdiction and Procedure Under the Bankruptcy Amendments of 1984,* 38 VAND.L.REV. 675, 676–677 (1985).

**8.** *In re Nilsson,* 42 B.R. 587 (Bkrtcy.C.D.Cal. 1984); and Ginsburg, BANKRUPTCY, ¶ 1127 n. (6) and n. (13) (Prentice-Hall 1985). *But cf. In re Butcher,* 46 B.R. 109 (Bkrtcy.N.D.Ga.1985), relied on by Knostman, in which the state court case was removed directly to the Bankruptcy Court in Atlanta, Georgia, which transferred it directly to the "home" Bankruptcy Court in Knoxville, Tennessee. Transfer is reviewable

while remand is not, and this may distinguish that case. Certainly, some transfers may be made by the bankruptcy court, e.g., transfer to a bankruptcy court for the district to which a debtor has moved, for the purpose of holding a reaffirmation and discharge hearing under section 524(d) of the Bankruptcy Code, a core proceeding under 28 U.S.C. § 157(b)(2)(O) ("other proceedings affecting ... the adjustment of the debtor-creditor ... relationship"). In any event, the burden on the party requesting transfer was met in *Butcher.* It was not met here where the equities favoring remand are dominant.

**9.** "Any equitable ground" sufficient for removal might include: (1) forum non conveniens; (2) that the entire action of a bifurcated matter should be tried in the same court; (3) that a state court is better able to resolve state law questions; (4) expertise of a particular court; (5) judicial economy; (6) prejudice to the involuntarily removed party; (7) comity; and (8) the lessened possibility of an inconsistent result. *Browning v. Navarro,* 743 F.2d 1069, 1076 n. 21

with the general remand powers of the district court found at 28 U.S.C. § 1447(c).

Special provision is also made for the transfer of bankruptcy cases or proceedings. Section 1412 of Title 28, U.S.C., states that "A district court may transfer a case or proceeding under title 11 to a district court for another district, *in the interest of justice or for the convenience of the parties.*" (Emphasis supplied; and note that the word "and" in old section 1475 was changed to "or" in this new section 1412 by the 1984 amendments.)[10] The similar general change of venue statute, 28 U.S.C. § 1404(a), permits consideration of the "convenience of parties *and witnesses*" (emphasis supplied), but only the "convenience of the parties" is relevant to the motion to transfer in this bankruptcy case. Accordingly, the convenience of the witnesses Knostman would be required to bring to Birmingham for trial is irrelevant except in the context of the cost to Knostman.

Even though abstention is not considered one of the practical alternatives, 28 U.S.C. § 1334(c) strongly suggests that a case such as this should be tried in a State forum. Plaintiffs' case is "based upon a State law claim or State law cause of action ... with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section ... and can be timely adjudicated, in a State forum of appropriate jurisdic-

tion." Section 1334(c)(2) does not actually apply because Plaintiffs' case is a proceeding "arising in a case under title 11" which is excluded, and because the *mandatory* abstention provisions of that section were not made effective with respect to cases, such as this one, pending on July 10, 1984, or to proceedings arising in or related to such cases. *See* section 122(b), Pub.L. No. 98–353, July 10, 1984; and *In re Baren,* 47 B.R. 39 (Bkrtcy.N.D.Ill.1984), *aff'd* 48 B.R. 752 (N.D.Ill.1984). The Court may and should exercise its discretion to accomplish by remand the Congressional purpose favoring "comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1). *In re Atlas Automation, Inc.,* 42 B.R. 246 (Bkrtcy.E.D.Mich.1984); and *In re Dakota Grain Systems, Inc.,* 41 B.R. 749 (Bkrtcy. D.N.D.1984).

The Alabama Court was moving to hear this case on preliminary injunction when it was removed. Without suggesting that the case would not proceed promptly if transferred to Houston, there are several stumbling blocks it would encounter there that would not be experienced on remand to the State Court. The Plaintiffs have demanded and are entitled to a jury trial on some of the issues. This presents no problem in the State Court. It presents a formidable problem if transferred to Houston because of the unsettled state of the law regarding jury trials in bankruptcy cases.[11]

---

(5th Cir.1984), construing the first sentence of repealed 28 U.S.C. § 1478(b), a sentence identical to the current, bankruptcy-related removal statute, 28 U.S.C. § 1452(b). *See also In Re Baren,* 47 B.R. 39, 43 (Bkrtcy.N.D.Ill.1984), *aff'd* 48 B.R. 752 (N.D.Ill.1984); and *In re U.S. Air Duct Corp.,* 8 B.R. 848, 854 (Bkrtcy.N.D.N.Y. 1981).

**10.** Factors considered by other bankruptcy courts to decide the issue of transfer include: (1) proximity of the debtor, creditors and witnesses to the court; (2) location of assets; and (3) economical and efficient administration of the estate. *See In Re Macon Uplands Venture,* 2 B.R. 444, 445 (D.Md.1980), and the cases cited therein, construing repealed 28 U.S.C. §§ 1475 and 1477, sections similar to current 28 U.S.C. § 1412 except for the differences noted above. Consider also factors applied to determine

whether a particular proceeding within a case should be transferred: (1) the relative ease of access to sources of proof; (2) the availability of compelling witness attendance and cost of that attendance; (3) the enforceability of a judgment; (4) whether a fair trial is possible; (5) the local interest in having localized controversies decided at home; and (6) a trial in the state whose law applies. *Id.* at 446. *See also In Re Butcher,* 46 B.R. 109 (Bkrtcy.N.D.Ga.1985), which discusses (1) factors to determine "convenience of the parties" and (2) the relationship of the repealed sections to the current section.

**11.** *See* King, *Jurisdiction and Procedure Under the Bankruptcy Amendments of 1984,* 38 VAND. L.REV. 675 (1985); Sabino, *Jury Trials in the Bankruptcy Court,* COMM.L.J., Aug.–Sept. 1985, at 342; *In re L.A. Clarke and Son, Inc.,* 51 B.R. 31 (Bkrtcy.D.C.1985); and *In re Bokum Re-*

As a non-core case, delay could also be expected in a bifurcated trial in the Houston Bankruptcy Court for findings of fact and conclusions of law and in the Houston District Court for a final order or judgment on its de novo review. The State Court will be able to try and decide the case without the delays that would unavoidably attend disposition in the courts exercising bankruptcy jurisdiction.

The position AmSouth Bank takes on these motions is anomalous. It argues that the equities of this case require its remand, but it does not insist on applying 12 U.S.C. § 94 under which venue as to it would be in a court in Jefferson County, Alabama. Despite its refusal to insist on the provisions of 12 U.S.C. § 94, remand to the State Court will avoid the conflict as to venue with respect to AmSouth Bank which would exist if the case is transferred to Houston.[12]

Knostman has focused on the expenses to the Debtor's estate if he is required to try this case in the Alabama Court. However, unsecured creditors are not nearly as

involved in the expenses of developing the Johns Field, and in the costs of litigation, as a consortium of banks whose collateral is at stake. These banks will reap the principal benefit, if any, from the Trustee's efforts to develop the Johns Field. This case involves and arises out of the Trustee's postpetition activities in Mississippi and Alabama, and little weight should be given to the expenses of litigation incidental to this venture whose costs are astronomical.[13]

The Trustee also says that the Houston Bankruptcy Court is peculiarly situated and equipped to understand and decide this case. Acknowledging the complexity of the bankruptcy case, the decision in Plaintiffs' case will not require heroic erudition or an understanding of the proceedings in Houston. Alabama law will govern the issues based on fraud and misrepresentation. *Cf. Henley v. Birmingham Trust National Bank*, 295 Ala. 38, 46, 322 So.2d 688, 694 (1975). Mississippi law will govern the interpretation of the JOA and its

---

*sources Corp.,* 49 B.R. 854 (Bkrtcy.D.N.Mex. 1985).

**12.** There is a direct conflict between the venue provision of the National Bank Act, 28 U.S.C. § 94 and the venue provision of the Bankruptcy Code, 28 U.S.C. §§ 1408–1410, 1412. Similarly, there is a direct conflict between the courts attempting to resolve this question. On one hand, some courts have held that the National Bank Act governs. *See In Re James Paul Neese,* 12 B.R. 968, 971 (Bkrtcy.W.D.Va.1981), holding that the predecessor sections to 28 U.S.C. § 1408 *et seq.* (28 U.S.C. §§ 1472–1477) were general and did not repeal by implication the specific statute 28 U.S.C. § 94. On the other hand, at least one court has held to the contrary. *In Re Dean Ford, Inc.,* 38 B.R. 4, 6 (Bkrtcy.N.D.Ga. 1982), holding that 12 U.S.C. § 94 was repealed by 28 U.S.C. § 1471 but citing *In re Associated Transport, Inc.,* 3 B.R. 124 (Bkrtcy.S.D.N.Y. 1980); *In Re Malone,* 5 B.R. 658 (Bkrtcy.S.D.Cal. 1980); *In Re Dick & Co.,* 8 B.R. 358 (Bkrtcy.N.D. Ind.1980); and *In Re James Paul Neese,* 12 B.R. 968 (Bankr.W.D.Va.1981), as four cases which have reached opposite results. *See also* the recent case of *Matter of Chuck Harrison Dodge, Inc.,* 49 B.R. 381 (W.D.Pa.1985); holding the venue provision of 12 U.S.C. § 94 governs over the bankruptcy venue provisions in a preference action against a national bank. As the parties in this case do not press the issue, it is not neccesary

to decide the question. This is fortunate in light of the changed venue sections of title 28 of the U.S.Code.

**13.** In their September 30, 1985 letter to all unsecured creditors concerning their application for over $800,000 attorneys' fees and expenses, attorneys for the Trustee Knostman, wrote:

> The effect of the agreement and the order is that the bank group will permit its cash collateral to be used by the Trustee for legal fees and operating expenses *without requiring the estates to repay the bank group* unless the Trustee spends the money on items not previously disclosed to the bank group.

> &ast; &ast; &ast;

> As I mentioned, the bank group is funding the payment of our firm's fees through its cash collateral which the estates are not obligated to repay. The impact of our fees on unsecured creditors is therefore very small. To the extent the bank group funds our fees, they have a larger unsecured claim than at the outset of the case, but only insofar as our fees are not otherwise chargeable to them under § 506(c) of the Code. Given the large amount of just the unsecured claims filed in this case, in the range of $300,000,000, the impact of our fees, which at worst creates a larger unsecured claim of the bank group, is negligible on the other unsecured creditors of the estate.

Emphasis in original.

supplement because the parties agreed to apply the law of that State.[14] The L/Cs are subject to the Uniform Customs and Practice for Documentary Credits (1983 Revision), International Chamber of Commerce, Paris, France, Publication No. 400, concerning which no court has any apparent expertise not shared by others. There will also be a question whether the Alabama Uniform Commercial Code will apply. The final judgment rendered in Plaintiffs' case could affect the bankruptcy proceedings in Houston, and if the case is remanded to the Alabama Court, the Plaintiffs should be ordered to enforce any money judgment they may obtain in the bankruptcy case in Houston.

## V. Conclusion.

Based on the findings of fact and conclusions of law stated in this Report, this Court concludes that the Plaintiffs' case should be remanded on equitable grounds to the Circuit Court of Jefferson County, Alabama, from which it was removed; and that the motion to transfer should be denied. The Plaintiffs should be ordered to pursue any collection of any money judgment they may obtain in the Alabama Court through the processes available in the Houston Bankruptcy Court.[15]

---

**14.** The JOA attached to the Plaintiffs' state court complaint reads, "If the Contract Area is in two or more states, the law of the state of _____ shall govern." Omission in original. Notwithstanding this omission, the parties assured the Court that the law of the State of *Mississippi* governs the JOA.

**15.** The order should be addressed solely to the Plaintiffs to avoid any suggestion that it is a condition of remand directed to the Alabama Court. *See Browning v. Navarro,* 743 F.2d 1069 (5th Cir.1984).