In re Beverly **ROYAL,** Debtor.

Beverly **ROYAL,** Plaintiff,

v.

**Walt Alinder DAIHATSU; Credit Acceptance Corp.; and Western Diversified Life Insurance Co., Defendants.**

**Bankruptcy No. 94–07053–TOM–13. Adv. No. 96–00106.**

United States Bankruptcy Court, N.D. Alabama, Southern Division.

June .12, 1996.

---

David Harrison and Allison Shelley, Birmingham, Alabama, for Ms. Royal.

Wynn Shuford, Birmingham, Alabama, for Credit Acceptance Corporation.

John Graham, Birmingham, Alabama, for Western Diversified Life Insurance.

## MEMORANDUM OPINION AND ORDER

TAMARA O. MITCHELL, Chief Judge.

This matter is before the Court on the Motion to Remand or, in the Alternative, to Abstain or Remand and the Motion to Stay Enforcement of Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure filed by the Plaintiff/Debtor Beverly Royal. Appearing at the April 15, 1996, hearing on the motions were David Harrison and Allison Shelley, attorneys for Ms. Royal, Wynn Shuford, attorney for Credit Acceptance Corporation (Credit Acceptance), and John Graham, attorney for Western Diversified Life Insurance Company (Western Diversified). The motions before the Court today are core proceedings. 28 U.S.C. § 157(b)(2)(A). The Court has considered the motions, the pleadings, and the argu-

ments of counsel and finds and concludes as follows.[1]

## I. FINDINGS OF FACT

Ms. Royal filed for relief under Chapter 13 of the Bankruptcy Code on November 23, 1994. That case was confirmed on January 3, 1995, and is still pending in this Court. Credit Acceptance filed a proof of claim in Ms. Royal's case indicating a secured debt of $4,540.30. On January 22, 1996, Ms. Royal filed a complaint against Walt Alinder Daihatsu (Alinder), Credit Acceptance and Western Diversified in the Circuit Court for Jefferson County. The complaint alleged claims based on unconscionability, breach of contract, fraud, outrage, breach of trust and fiduciary duty, civil conspiracy, and violations of *Ala.Code* § 5–19–20 (the "Complaint"). The case was assigned Civil Action Number CV–96–035. All of the relevant facts are alleged in the Complaint to have occurred in connection with the prepetition sale of an automobile to Ms. Royal by Alinder. The Complaint alleges that Ms. Royal took out credit life insurance at the time of the purchase which was written by Credit Acceptance and Western Diversified. Credit Acceptance filed a Notice of Removal on March 1, 1996. Alinder and Western Diversified joined the removal. Ms. Royal filed her Motion to Remand and Motion to Stay on March 18, 1996.

1. This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052.

2. Several of the bankruptcy courts in Alabama have recently addressed these issues in cases similar to the instant one. Although the reasoning of each court may differ slightly, the results have been uniform in returning the cases to the state courts for adjudication. *See, Roddam v. Metro Loans, Inc. (In re Roddam),* 193 B.R. 971 (Bankr.N.D.Ala.1996) (J. Cohen); *Coleman v. First Family Financial Service, Inc., (In re Coleman),* Case No. 95–13109, Adv. No. 96–1007, 1996 WL 420451 (Bankr.S.D.Ala. February 15, 1996) (J. Mahoney); *Alfonzo Calloway v. Baker Furniture Co. (In re Sumpter),* Case No. BK 93–08098–CMS–13, Adv. No. 95–00465, 1996 WL 420466 (Bankr.N.D.Ala. January 23, 1996) (J. Stilson); *Twyman v. Wedlo, Inc. (In re Dye),* Case No. 95–40639, Adv. No. 95–40639 (Bankr.

## II. DISCUSSION AND CONCLUSIONS OF LAW

### A. INTRODUCTION

 "Jurisdiction" literally means "to speak the law." In application, it refers to the power of a court to adjudicate the case before it. The concept of jurisdiction is tied to Constitutional mandates and policy concerns. The jurisdictional scheme of the bankruptcy courts is a particularly complicated and confusing area of law.[2] Questions regarding the subject matter jurisdiction of a bankruptcy court frequently arise in removed cases, such as the instant one.[3] In unraveling a question of bankruptcy court jurisdiction over a removed case, the first issue is whether the matter is properly heard within the federal court system, i.e. whether the federal court has subject matter jurisdiction. Concern over federalism and comity between the courts has engendered a jurisdictional scheme whereby certain matters are thought to be only properly heard by federal courts and other matters are consigned solely to the jurisdiction of the state courts. *See, Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). Certain other matters are under the concurrent jurisdiction of both the federal and state courts.

 When a federal court determines that it has at least concurrent subject matter

N.D.Ala. October 27, 1995) (J. Sledge); *McCray v. Life of the South Ins. Co. (In re McCray),* Case No., Adv. No. 95–00056–RRS–13 (Bankr. M.D.Ala. July 18, 1995) (J. Steele); *Traylor v. First Family Financial Services, Inc. (In re Traylor),* Case No. 91–04811–APG–7, Adv. No. 93–00209–APG (Bankr.M.D.Ala. May 22, 1995) (J. Gordon); affirmed 192 B.R. 255 (M.D.Ala.1995).

3. The Court is cognizant of the fact that the term "case" as used in the bankruptcy context usually refers to the main bankruptcy case which is begun by the filing of a petition. All litigation and all controversies determined by the court and all procedures of administration within the case are covered by the term "proceeding." Therefore, a state court case which is removed to bankruptcy court becomes a "proceeding." *See* Senate Report No. 989, 95th Cong., 124 Congressional Record S216, 153. However, to avoid confusion, all references to the adversary proceeding now under consideration by this Court will be to the "removed case."

jurisdiction over a removed case, it must then determine if it is proper for it to exercise that jurisdiction. If the federal court determines that there is concurrent jurisdiction, it may decide that it is more proper for the state court to hear the case. Two doctrines exist whereby a federal court may relinquish jurisdiction in favor of another forum: remand [4] and abstention.[5]

Finally, if the federal court decides both that it has subject matter jurisdiction and that it is proper for it to exercise that jurisdiction, the federal court must then determine in which division of the federal court system the removed case belongs. The bankruptcy courts are divisions of the federal district courts and have no jurisdiction separate and apart from them. *See* 28 U.S.C. § 1334. The district courts may refer matters to the bankruptcy court for adjudication pursuant to 28 U.S.C. § 157(a).[6] However, even after a matter is referred to the bankruptcy court, it may be determined that the matter should properly be heard by the district court.[7] In that case, the district court may "withdraw the reference" and reclaim the matter as its own. 28 U.S.C. § 157(d). Section 157 gives guidance as to what matters should and should not be heard by the bankruptcy courts. Subsection (b)(2) of § 157 gives a noninclusive list of matters which are "core proceedings." Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11 or in a case under title 11. 28 U.S.C. § 157(b)(1).

Unfortunately, these three areas, subject matter jurisdiction, exercise of jurisdiction, and withdrawal of the reference, are often confused. In addressing a question of bankruptcy court jurisdiction in the context of a removed case, it is suggested that the three areas of concern be kept separate. Accordingly, it is helpful to ask and answer the following three questions in order: (1) Does subject matter jurisdiction exist? (2) If so, should that jurisdiction be exercised, or is abstention or remand appropriate? (3) If jurisdiction is to be exercised, should it be exercised by the federal district court or by the bankruptcy court? [8]

## B. SUBJECT MATTER JURISDICTION

### 1. *Introduction*

When faced with a motion to remand a case removed from state court the first question which a federal court must answer is whether it has subject matter jurisdiction. Federal district courts have original and exclusive jurisdiction of all cases under title 11.[9] 28 U.S.C. § 1334(a). Additionally, federal district courts have original but not exclusive jurisdiction of "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Thus, as stated in *Wood v. Wood (In re Wood)*, 825 F.2d 90 (5th Cir.1987):

> Section 1334 lists four types of matters over which the district court has jurisdiction:
>
> 1. "cases under title 11",
>
> 2. "proceeding arising under title 11"
>
> 3. proceedings "arising in" a case under title 11, and

---

**4.** *See infra* pp. 349–50 on the doctrine of remand.

**5.** *See infra* pp. 350–51 on the doctrine of abstention.

**6.** The District Court for the Northern District of Alabama has referred all cases, matters and proceeding in cases under title 11 of the Bankruptcy Code to the bankruptcy judges for this district by the General Order of Reference Dated July 16, 1984, as Amended July 17, 1994.

**7.** *See* Fed.R.Bankr.P. 5011 regarding the procedure for and effect of filing a motion for withdrawal of the reference.

**8.** The framework proposed here for addressing questions of jurisdiction is substantially similar to that suggested in Randolph J. Haines, *Issues in Litigation—Ninth Circuit Confuses Abstention and Reference*, 2 Norton Bankr.L.Adviser 9 (1996).

**9.** Pursuant to 28 U.S.C. § 157(a), the District Courts for the Northern District of Alabama have referred all cases, matters and proceedings in cases under title 11 of the United States Code to the bankruptcy judges for this district by the General Order of Reference Dated July 16, 1984, as Amended July 17, 1994.

4. proceedings "related to" a case under title 11.

*Id.* at 93.

The first category refers merely to the bankruptcy petition itself, over which district courts (and their bankruptcy units) have original and exclusive jurisdiction. *Id.* Proceedings "arising under title 11" are those that involve a cause of action created or determined by a statutory provision of title 11. *Id.* at 96. The phrase "proceedings arising in" a case under title 11 seems to be a reference to those "administrative" matters that arise only in bankruptcy cases and would have no existence outside of bankruptcy. *Id.* at 97. "Related to" proceedings are those proceedings not falling into any of the other three categories but the outcome of which "could conceivably have any effect on the estate being administered in bankruptcy." *Id.* at 93 (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir.1984).) Fortunately, it is not necessary to distinguish between these four categories for the purpose of determining whether a particular matter falls within bankruptcy jurisdiction as these references operate conjunctively to define the scope of jurisdiction. Therefore, it is necessary only to determine whether a matter is at least "related to" the bankruptcy. *Id.*

In *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.),* 910 F.2d 784 (11th Cir.1990), the Eleventh Circuit Court of Appeals adopted the standard for "related to" jurisdiction as set out in *Pacor, Inc. v. Higgins,* 743 F.2d 984 (3rd Cir.1984):

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.

*Lemco Gypsum,* 910 F.2d at 788 (quoting *Pacor,* 743 F.2d at 994.)

2. *Jurisdiction versus withdrawal of the reference*

Often an examination of jurisdiction begins with a discussion of whether the action can be classified as a "core proceeding" under 28 U.S.C. § 157(b).[10] The term "core proceeding" is sometimes stated to be "roughly equivalent" to "arising under title 11 or arising in a case under title 11." 3 David G. Epstein, Steve H. Nickles, and James J. White, Bankruptcy 198 (West 1992). It is tempting to leap from this generalization to the conclusion that if the matter is "core" it must be within the subject matter jurisdiction of the federal courts. Although this conclusion is generally, if not always, true, this should not lead to the practice of using the term "core proceeding" interchangeably with "arising under title 11 or arising in a case under title 11."

Approaching subject matter jurisdiction by referring to whether a matter is "core" or not may be confusing because it fails to recognize the distinction between the concepts of subject matter jurisdiction, exercise of jurisdiction, and withdrawal of the reference. The term "core proceeding" was actually adopted by Congress following *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), to comprise those matters which constitute "public rights" created by federal statute as opposed

---

**10.** *See Torkelsen v. Maggio (In re The Guild and Gallery Plus, Inc.,),* 72 F.3d 1171 (3rd Cir.1996); *Benedor Corp. v. Conejo Enterprises, Inc. (In re Conejo Enterprises),* 71 F.3d 1460 (9th Cir.1995); *Walker v. Commercial Credit Corp.,* 192 B.R. 260 (M.D.Ala.1996); *Dean v. American General Finance, Inc.,* 191 B.R. 463 (M.D.Ala.1996); *KO*

*Trucking Co., Inc. v. Ground Control, Inc. (In re KO Trucking Co., Inc.),* 99 B.R. 78 (N.D.Ala. 1988); *Celotex Corp. v. AIU Insurance Co. (In re Celotex Corp.),* 152 B.R. 667 (Bankr.M.D.Fla. 1993); *The Foley Co. v. Aetna Casualty & Surety Co. (In re S & M Constructors, Inc.),* 144 B.R. 855

**348**

to state-created "private rights." [11] "Private rights" are those which are inherently judicial in nature and are created by the states or are grounded in common law. *Id.* at 67–71, 102 S.Ct. at 2869–72. "Public rights" are those that would not exist but for their creation by federal statute. *Id.* The Supreme Court held in *Marathon* that bankruptcy judges who are appointed under Article I of the Constitution may only hear and determine "public rights" and that district judges appointed under Article III of the Constitution must hear and determine matters concerning "private rights." *Id.* The policy concerns were over the separation of powers between the judicial branch and the legislative branch. The Supreme Court in *Marathon* was concerned that, by creating "courts" under Article I to hear inherently judicial matters, Congress had overstepped the bounds of its authority, was usurping the powers of the judicial branch, and was violating the tenets of the doctrine of separation of powers. *Id.*

■ To address this concern the concept of "withdrawal of the reference" was created by Congress. The federal district courts were given the power to withdraw the reference from the bankruptcy court in order to prevent a matter concerning "private rights" from being adjudicated by an Article I court. The term "core proceeding" was adopted and 28 U.S.C. § 157(c) was enacted to aid in the decision of when the reference should be withdrawn, i.e., when "private rights" are at issue in a matter. Designation of a proceeding as "core" relates to whether it is due to be heard in an Article III court rather than in an Article I court and has no relevance to the issue of whether or not subject matter jurisdiction exists in the federal courts.

#### 3. *Application to the instant case*

■ The initial issue presently before this Court is whether the federal court has subject matter jurisdiction. Applying the *Lemco Gypsum* test for subject matter jurisdiction to the facts of the case at hand, it appears that the removed case is sufficiently related to Ms. Royal's bankruptcy case so as to be properly under the jurisdiction of this Court. The plaintiff in the Complaint is Ms. Royal, the debtor in Bankruptcy Case Number 94–07053. The defendants named in the

(Bankr.W.D.Mo.1992); *Kolinsky v. Russ (In re Kolinsky)*, 100 B.R. 695 (Bankr.S.D.N.Y.1989).

11. The term "core" found its way into the Code from its use in the Supreme Court's opinion in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). *See, Bankruptcy Court Act of 1982: Hearings on H.R. 6109 before the Subcommittee on Monopolies and Commercial Law of the Committee of the Judiciary*, 97th Cong., 2d Sess. (1982) (testimony of Jonathan C. Rose, assistant Attorney General, Office of Legal Policy, Department of Justice). In *Marathon*, the Supreme Court declared that the jurisdictional scheme under the 1978 Bankruptcy Act was unconstitutional because it was overbroad in its grant of jurisdiction to the bankruptcy courts in violation of Article III of the Constitution. *Marathon*, 458 U.S. 50, 102 S.Ct. 2858. At issue in *Marathon* was not whether the matter should have been adjudicated in the state courts as opposed to the federal courts but whether the case should have been under the jurisdiction of district judges appointed under Article III of the Constitution instead of bankruptcy judges appointed under Article I. *Id.* at 52, 102 S.Ct. at 2861–62.

The *Marathon* court determined that Congress had the power to authorize non-Article III "adjuncts" such as bankruptcy judges to hear matters which concerned "public rights" but could not authorize non-Article III judges to rule on "private rights." *Id.* at 67–71, 102 S.Ct. at 2869–72. The Court seemed to accept the proposition that a discharge in bankruptcy was a "public right" because it was created by federal statute. *Id.* at 71, 102 S.Ct. at 2871–72. However, the Court felt that rights which were not created by federal statute were "inherently judicial" private rights which could not be determined by Article I courts. *Id.* at 67–71, 102 S.Ct. at 2869–72. The *Marathon* court used the term "core" as follows:

But the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages that is at issue in this case.

*Id.* at 71, 102 S.Ct. at 2871–72. In his testimony before the Subcommittee on Monopolies and Commercial Law of the Committee of the Judiciary, just weeks after the *Marathon* decision was issued, Jonathan C. Rose, assistant Attorney General, Office of Legal Policy, Department of Justice, referred often to the *Marathon* decision in recommending that the jurisdiction of bankruptcy courts be limited to "those matters which are 'public rights,' in essence the core issues in bankruptcy adjudications." This seems to be the genesis of 28 U.S.C. § 157(b).

Complaint include Credit Acceptance. Credit Acceptance has filed a proof of claim in Ms. Royal's bankruptcy case indicating that Credit Acceptance holds a secured claim against Ms. Royal in the original amount of $4,540.30 arising from the purchase of a motor vehicle. The same transaction which gave rise to the claim of Credit Acceptance is also the subject of the Complaint. The resolution of the dispute between Ms. Royal and Credit Acceptance which is the subject of the Complaint could ultimately be res judicata as to a future objection by Ms. Royal to the claim of Credit Acceptance.[12] Therefore, this matter could conceivably affect the debtor's rights and liabilities in the bankruptcy case and is sufficiently related to the main bankruptcy case as to come within the jurisdiction of this Court.[13]

The determination that this matter is at least "related to" the bankruptcy sufficiently so as to give the federal courts subject matter jurisdiction pursuant to § 1334 is the sole consideration in reaching the conclusion that this Court does have subject matter jurisdiction over the adversary proceeding before it. That determination having been made, the Court must now consider whether it is proper to exercise the jurisdiction which exists over the removed case.

### C. EXERCISE OF JURISDICTION

In determining whether it is appropriate to exercise subject matter jurisdiction, the Court must address two doctrines which could cause the Court to decline to exercise the jurisdiction it holds: remand and abstention.

#### 1. *Remand*

▮▮▮▮ Removed cases are transferred back to the state courts via remand. 28

U.S.C. § 1452(b). Remand may be for "any equitable reason." *Id.* These equitable reasons may include those factors listed in § 1334(c)(2) for mandatory abstention. *In re Warren,* 125 B.R. 128 (E.D.Pa.1991); *Cook v. Griffin,* 102 B.R. 875 (N.D.Ga.1989). The equitable grounds include forum non conveniens, a state court's heightened ability to deal with questions of state law, the expertise of a particular court, the duplicative or uneconomic effort of judicial resources in two forums, prejudice to involuntarily removed parties, comity considerations, and the lessened possibility of inconsistent results. *Thomasson v. AmSouth Bank,* 59 B.R. 997 (N.D.Ala.1986). The three mandatory abstention requirements which may also be considered are: 1) the proceeding is based on a state law claim which, although related to a title 11 case, does not arise under title 11 or out of a title 11 case, 2) the proceeding could not have been commenced in federal court but for the bankruptcy, and 3) the state court can timely adjudicate the cause of action. 28 U.S.C. § 1334(c)(2).

▮▮▮▮ Application of these factors to the case at hand weighs in favor of remanding this case to state court. The claims asserted in the Complaint are based entirely on state law and are of a kind typically tried in state court. To try this Complaint in federal court could lead to rulings which would be inconsistent with state court rulings in other cases on issues similar to those raised here. On the other hand, if the matter is tried in state court and Ms. Royal later objects to the claim of Credit Acceptance on the basis of the state court rulings, the principles of res judicata could apply to prevent inconsistent results in the two courts.[14] This

---

**12.** *See infra* note 14 for discussion of the interrelation between the confirmation order, the Complaint, and a possible future objection to the claim of Credit Acceptance under 11 U.S.C. § 502(j).

**13.** Civil proceedings are often found to be related to a bankruptcy case where the debtor/plaintiff's right to recover is property of the estate under 11 U.S.C. § 541. However, because of the specific wording of the plan and the confirmation order in Ms. Royal's bankruptcy case, Ms. Royal's right to recovery here is no longer property of the

estate but has revested in her pursuant to 11 U.S.C. § 1327(b). Therefore, this can not be a basis for finding jurisdiction.

**14.** The argument is sometimes made in cases of this nature that the bankruptcy court should not remand the case because of the binding effect of its confirmation order. In short, the argument is that the confirmation order issued by the Court in this case is binding on the debtor and the creditors as to the amount and liability on claims. Thus, the argument goes, the claims asserted in the Complaint are barred by the

Complaint could not have been filed in federal court had it not been for Ms. Royal's bankruptcy. There is no greater convenience of this forum from that of the state court sitting in this county. Judicial resources will not be wasted in that the ruling on this motion is the only action taken by this Court in this matter.[15] Because the case is just commencing there can be no harm or prejudice to either party by returning the case to state court. There has been no showing that the state court can not timely adjudicate this matter upon its remand. Therefore, in the interests of comity, this Court finds it appropriate to remand this action to the Circuit Court for Jefferson County.

### 2. Abstention

■■■■■ Abstention is governed by 28 U.S.C. § 1334(c). There are two subsections of 1334(c): § 1334(c)(2) is referred to as mandatory abstention and § 1334(c)(1) is referred to as permissive abstention. Abstention is mandatory when the dictates of § 1334(c)(2) are met. That section provides in part that:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court [16] shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Alternatively, if the elements of § 1334(c)(1) are met, federal courts may abstain "in the interest of justice, or in the interest of comity with state courts or respect for state law" in proceedings arising under title 11 or arising in or related to a case under title 11.[17]

■■■ There is substantial disagreement between the courts as to whether § 1334(c)(2) mandatory abstention applies in removed cases. Section 1334(c)(2) requires that an action "is commenced, and can be timely adjudicated, in a State forum" before abstention is mandatory. One line of decisions interprets this language as meaning that for mandatory abstention to be applicable, there must be two cases on the same issues pending concurrently, one before a federal court and one before a state court. These courts reason that where a case is removed from state court to federal court, nothing will typically remain pending in state court. Therefore, these courts conclude that there could be no timely adjudication in state court of a removed case because nothing is

confirmation order and this Court should retain jurisdiction in order to enforce the binding effects of its order. This argument fails to take into account the existence of 11 U.S.C. § 502(j) which provides that an order allowing or disallowing a claim may be reconsidered according to the equities of the case. This remedy is available so long as the case remains open. Therefore, it is questionable what preclusive effect a confirmation order may have on subsequent challenges to claims when that confirmation order itself is still subject to being amended. Thus, the potential that results of the trial on the Complaint may be inconsistent with the confirmation order does not tip the balance in favor of denying this motion to remand because any inconsistency can later be corrected by a reconsideration of the allowance or disallowance to the claim pursuant to 11 U.S.C. § 502(j).

**15.** Plaintiff also has a motion pending to "Stay the Enforcement of Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure." With the granting of the motion to remand, this motion becomes moot.

**16.** The bankruptcy court may enter a final order on a motion to abstain which is reviewable by the district court on appeal. 28 U.S.C. § 1334(c); Fed.R.Bankr.P. 5011; *Holtzclaw v. State Farm Fire and Casualty Co. (In re Holtzclaw)*, 131 B.R. 162 (E.D.Cal.1991).

**17.** Again the temptation exists to use the term "noncore" in the place of "not arising under title 11 or arising in a case under title 11" and to state that mandatory abstention only applies to noncore cases. Just as "core" and "arising under title 11 or arising in a case under title 11" are not synonymous and should not be used interchangeably, the converse is also true. The core/noncore determination has relevance to mandatory abstention in only one particularized instance. 28 U.S.C. § 157(b)(4) provides that mandatory abstention does not apply to noncore proceedings for the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims. In all other instances, the core/noncore determination is not relevant to the question of abstention.

left pending in state court to be adjudicated and, thus, § 1334(c)(2) can not be applicable.[18] Other courts hold that the language of § 1334(c)(2) does not necessarily require two pending cases. These courts reason that abstention, or abstention coupled with remand, transfers the removed case back to the state court so that it can be timely adjudicated there thus satisfying all of the precepts of § 1334(c)(2).[19]

Ms. Royal's motion asked for this Court to remand this case to the state court or to, alternatively, abstain from hearing the case and remand it to state court. Because this Court has found that remand is proper in this instance, it is unnecessary for it to enter the debate over the parameters of § 1334(c)(2) and the doctrine of abstention. Therefore, the Court will not rule on the alternative relief requested by Ms. Royal.[20]

Accordingly, it is hereby

**ORDERED, ADJUDGED AND DECREED** that Plaintiff's Motion to Remand or, in the Alternative, to Abstain and Remand is **GRANTED**. This matter is **REMANDED** to the Circuit Court for Jefferson County. It is further

**ORDERED, ADJUDGED AND DECREED** that Plaintiff's Motion to Stay Enforcement of Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure is **DENIED** as moot.

18. *Manges v. Atlas (In re Duval County Ranch Co.),* 167 B.R. 848 (Bankr.S.D.Tex.1994); *Southern Marine and Industrial Services, Inc. v. American Overseas Marine Corp. (In re AK Services, Inc.),* 159 B.R. 76 (Bankr.D.Mass.1993); *Fedders North America, Inc. v. Branded Products, Inc. (In re Branded Products, Inc.),* 154 B.R. 936 (Bankr. W.D.Tex.1993); *Paul v. Chemical Bank (In re Associates),* 57 B.R. 8 (Bankr.S.D.N.Y.1985). *See also O'Rourke v. Cairns,* 129 B.R. 87 (E.D.La. 1991) (noting the "metaphysical but real question" debated in the courts about the ability of a federal court to abstain from a removed action and concluding that "[r]emand seems the theory which rests on firmer theoretical ground, although some abstention doctrine is at work as well.") *Id.* at 89.

19. *Robinson v. Michigan Consolidated Gas Co. Inc.,* 918 F.2d 579 (6th Cir.1990); *Walker v. Commercial Credit Corp.,* 192 B.R. 260 (M.D.Ala. 1996); *Luevano v. Dow Corning Corp.,* 183 B.R. 751 (W.D.Tex.1995); *Abadie v. Poppin,* 154 B.R. 86 (N.D.Cal.1993); *Su–Ra Enterprises, Inc. v. Barnett Bank of South Florida,* 142 B.R. 502 (S.D.Fla.1992); *Wilkins v. Bolar Pharmaceutical Co., Inc. (In re Pharmakinetics Laboratories, Inc.),* 139 B.R. 350 (D.Md.1992); *Dunkirk Ltd. Partner-* *ship v. TJX Companies, Inc.,* 139 B.R. 643 (N.D.Ohio 1992); *Baldwin Park Inn Associates v. City of Baldwin Park (In re Baldwin Park Inn Associates),* 144 B.R. 475 (C.D.Cal.1992); *Baxter Healthcare Corp. v. Hemex Liquidation Trust,* 132 B.R. 863 (N.D.Ill.1991); *Borne v. New Orleans Health Care, Inc.,* 116 B.R. 487 (E.D.La.1990); *Bates & Rogers Construction Corp. v. Continental Bank,* 97 B.R. 905 (N.D.Ill.1989); *Murray v. On–Line Business Systems, Inc. (In re Revco D.S., Inc.),* 99 B.R. 768 (N.D.Ohio 1989); *Gonzales Construction Co. v. Fulfer (In re Fulfer),* 159 B.R. 921 (Bankr.D.Idaho 1993).

20. Additionally, because there has been a determination that remand is appropriate in this case, there is no need to discuss the third question regarding whether the district court or the bankruptcy court would have been the proper forum within the federal system for the adjudication of this matter. Resolution of this question would have included a consideration of whether this proceeding is "core" and falls within those matters which a bankruptcy judge may hear and determine under 28 U.S.C. § 157(b). *See supra* p. 348 and n. 11 discussing the allocation of cases between the bankruptcy court and the district court and discussing the meaning and history of the term "core proceeding."