In re Jason Elgie WILSON and Desiree Lynn Wilson, Debtors.

Jason Elgie WILSON and Desiree Lynn Wilson, Plaintiffs,

v.

ALFA COMPANIES, et al., Defendants.

Bankruptcy No. 95–71495–CMS–7.
Adv. No. 96–70520.

United States Bankruptcy Court,
N.D. Alabama,
Western Division.

Sept. 27, 1996.

Alan B. Jaffe, Birmingham, AL.

Martin H. Levin, Pensacola, FL. and Archie C. Lamb, Birmingham, AL.

Joseph W. Hudson, trustee.

Charles N. Parnell, III, Montgomery, AL, Connie Ray Stockham, Birmingham, AL.

John M. Fraley, Birmingham, AL.

### MEMORANDUM OF DECISION

C. MICHAEL STILSON, Bankruptcy Judge.

This matter came before the court on the defendants' removal of this lawsuit from Marion County Circuit Court to the Bankruptcy Court and the plaintiffs' subsequent request that the Bankruptcy Court remand the suit back to state court. After reviewing the pleadings, documents and the briefs of the parties in the context of applicable law, the court finds that the equities require **REMAND** of the suit to Marion County.

### FINDINGS OF FACT

On June 2, 1994, Jason Elgie and Desiree Lynn Wilson signed an installment note and security agreement agreeing to repay ALFA Financial Corporation 120 installments of $296.64 each beginning July 12, 1994 ($35,596.80, including finance charges). The Wilsons were borrowing the money to purchase a new 1994 Cavalier mobile home. The contract also granted ALFA a security interest in the mobile home to secure the debt. The interest was perfected by ALFA's listing as first lienholder on the certificate of title to the mobile home dated July 24, 1994. (Attachments to BK Doc. 16, ALFA's *MOTION TO REOPEN THE CASE* )

The copy of the loan document in the file is labelled "INSTALLMENT NOTE—SECURED" on the first line. The second line of the heading reads "ALFA FINANCIAL CORPORATION—ADJUSTABLE RATE INSTALLMENT LOANS."

In the body of the agreement, the following paragraphs appear:

**ADJUSTABLE INTEREST RATE INFORMATION:** The annual percentage rate may decrease or increase during the term of this loan if the interest rate established as the "Bank Prime Loan Rate" as published in the "Federal Reserve Board's Statistical Release" is lower or higher on the interest adjustment dates, which shall be 06/12 of each year. The Index Rate used to determine the Annual Percentage

Rate on this note is currently 6.75%. The Annual Percentage Rate will not increase or decrease more than once each year, and will not be adjusted unless the change is at least ¼ of one percent (1%). The Annual Percentage Rate will not increase or decrease more than two percentage points in a one year period. The Annual Percentage Rate on this note will not fall below 3.00% or will not exceed 17.00%. Any change in the Annual Percentage Rate will result in an increase or decrease in your monthly payments. For example, if your loan was for $10,000.00 at 12% for 12 years and the Annual Percentage Rate increased by two percentage points to 14% after the first year, your monthly payments would increase from $131.34 to $141.67.

**ADJUSTABLE PAYMENTS:** You will pay the amounts due under this note by making consecutive monthly payments on the $296.64 (sic) day of each month, beginning 07/12/94. Your monthly payment may adjust each year during the term of this note in order that you might repay the amounts due under this note by 06/12/04, which is the maturity date of this note.

The Wilsons stated in their subsequent lawsuit against various ALFA corporate entities that Butch McCarley, a resident of Marion County, was the ALFA agent who handled their credit transaction and also sold them ALFA homeowners insurance on the mobile home. (Attachments to BK Doc. 16)

On August 3, 1995, the Wilsons filed their Chapter 7 bankruptcy petition. (BK Doc. 1) Notice was sent out to creditors that the Chapter 7 liquidation would be a "no asset" case because "At this time there appear to be no assets available from which payment may be made to unsecured creditors...." (BK Doc. 3)

In the schedules filed with their bankruptcy petition, the Wilsons listed their mobile home, with ALFA Financial Corporation listed as a secured creditor, on **SCHEDULE A—REAL PROPERTY.** The Wilsons listed the value of the home at $22,500.00. In **SCHEDULE B—PERSONAL PROPERTY,** Question 20 asked the debtors to state their interests in "Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims." The Wilsons put down "None."

Causes of action against creditors and others stemming from prebankruptcy transactions would normally be listed as assets in this category. The Wilsons, obviously, did not list any prepetition causes of action against the ALFA corporations, McCarley or anyone else as assets in their **SCHEDULE B—PERSONAL PROPERTY.**

Nor did the Wilsons claim any prepetition causes of action and their proceeds as exempt from the bankruptcy liquidation process in their **SCHEDULE C—PROPERTY CLAIMED AS EXEMPT.** Both Jason Elgie and Desiree Lynn Wilson signed *Debtor Statement of Intentions* filed with the schedules which declared their intent to "Retain—reaffirm (524(c))"[1] the mobile home and the debt to ALFA. These documents were also filed with the petition on the day the bankruptcy was filed.

The Wilsons also stated they intended to "Retain—reaffirm (524(c))" their mobile home, a 1994 Suzuki four-wheeler; jewelry; and a 1989 GMC truck, all items of collateral on loans.

No creditor appeared at the Wilsons' Section 341 meeting of creditors held September 15, 1995. (BK Doc. 4) Chapter 7 Trustee Joseph W. Hudson, Esq. filed his *FINAL*

---

1. **11 U.S.C. § 524** provides a procedure in which debtors may "reaffirm" or create a novation of a credit contract postpetition. If the agreement meets the filing and other requirements of Section 524(c), the debtor will be bound by the new agreement and will not be discharged of personal liability to the creditor. In the absence of a reaffirmation agreement, the Chapter 7 discharge removes the debtor's personal liability to a secured creditor under the original, prepetition contract—even though the creditor's collateral may still be in the debtor's possession, even though the creditor retains its *in rem* lien in that collateral and even though the debtor may still be making payments to the creditor. In this situation, the creditor may enforce only its *in rem* rights—repossession or foreclosure—in the event of a default. But without a reaffirmation, the creditor may not pursue the debtor personally for any deficiency between the debt and the repossession sale price of the collateral.

*REPORT OF TRUSTEE IN NO ASSET CASE* on September 15 as well. (BK Doc. 5) Hudson's report stated:

... I have not received any property nor have I paid any monies out on account of this estate; furthermore, I have made diligent inquiry into the whereabouts of property belonging to the estate; and there are, to the best of my knowledge, no assets in the estate over and above the exemptions lawfully claimed by the debtor(s). Unless the Court orders otherwise, I deem abandoned any and all property of the estate that is unadministered as of the date of this report....

On October 10, 1995, ALFA Financial Corporation filed a proof of claim in the Wilson bankruptcy for $24,764.48 in debt secured by the 1994 mobile home.

On November 15, 1995, the First State Bank of Lamar County filed a reaffirmation agreement in which the Wilsons reaffirmed their debt to the bank on the GMC truck pursuant to 11 U.S.C. 524(c). (BK Doc. 6A)

On November 16, 1995, this court entered a discharge order which discharged the Wilsons of personal obligation for all dischargeable prepetition debt. (BK Doc. 7) The court also entered an *ORDER APPROVING TRUSTEE'S REPORT OF NO DISTRIBUTION AND CLOSING ESTATE* that same day. (BK Doc. 8)

At that point, although the Wilsons had stated their intention to enter reaffirmation agreements with creditors on four items of collateral—their mobile home, the Suzuki four-wheeler, the GMC truck and jewelry—only one reaffirmation agreement had actually been filed with the court. That was Doc. No. 6A reaffirming the debt secured by the truck.

On December 20, 1995, ALFA Financial Corporation moved to reopen the Wilsons' Chapter 7. ALFA's motion stated:

5. The Debtors wish to reaffirm the said debt to the Movant and agreed to do so before discharge was entered. A copy of the Reaffirmation Agreement is attached hereto as Exhibit "A", and incorporated by reference.

6. The Movant inadvertently failed to file the said Reaffirmation Agreement prior to the Debtors' discharge.

7. The Debtors consent to the reopening of the above-referenced case.

ALFA's motion asked the court to reopen the Chapter 7 and to approve the Reaffirmation Agreement "pursuant to 11 U.S.C. § 524(d)(2)." (BK Doc. 9) The Wilsons' signatures, as well as that of Alan Jaffe, their bankruptcy lawyer, appear on the copy of the reaffirmation agreement attached to BK Doc. 9 and the original, filed with the court January 17, 1996 as BK Doc. 10. The signed reaffirmation agreement is dated September 11, 1995.

The agreement states:

4. Debtor and Alfa Financial Corporation understand and acknowledge that the agreement may be rescinded by the debtor at any time prior to discharge or within sixty (60) dayes (sic) after such agreement is filed with the Court, whichever occurs later, by giving notice of rescission to Alfa Financial Corporation.

5. Debtor understands and acknowledges that if he does not cancel this Reaffirmation Agreement before the end of the period stated in Number 4 above, he will (sic) bound (sic) this Reaffirmation Agreement and the terms and conditions of the original note or any additional note, or any document to be executed in the regards to this Agreement....

7. Any cancellation of this Agreement by the debtor during the period of time set forth in Number 4 above shall be in writing and mailed or delivered to Alfa Financial Corporation, Post Office Box 11000, Montgomery, AL 36198.

The court granted ALFA's *MOTION TO REOPEN CASE* on January 18, 1996. (BK Doc. 11) Then on February 8, 1996, the court entered an *ORDER CLOSING ESTATE.* (BK Doc. 13)

On February 28, 1996, the Wilsons filed suit in Marion County Circuit Court against ALFA Companies, ALFA Corporation, ALFA Financial Corporation, ALFA General Insurance Corporation, ALFA Insurance Corporation, ALFA Investment Corporation,

ALFA Life Insurance Corporation, ALFA Mutual Fire Insurance Company, ALFA Mutual General Insurance Company, ALFA Mutual Insurance Company, ALFA Services, Inc.; Butch McCarley; and "Defendants **A, B, C,** ..." et al (hereafter "the ALFA defendants").

The allegations of wrongdoing against the ALFA entities through the conduct of McCarley as their agent, centered around the June 2, 1994 credit transaction between the Wilsons and ALFA. The Wilsons alleged in the complaint of Marion County CV–96–35, that McCarley led them to believe that purchasing homeowners insurance from ALFA was a requirement for getting a loan from ALFA in violation of *Ala.Code* § 5–19–20 et seq. (the Mini–Code) and that they were not informed that they were entering an adjustable rate contract rather than a fixed payment agreement.

Other counts in the complaint also include state law non-disclosure and suppression in violation of *Ala.Code* §§ 6–5–102, 103 and 104; conversion; breach of fiduciary duty; unjust enrichment; fraud; negligent misrepresentation; improper hiring, supervision, retention, and failure to monitor actions of officers, agents and/or employees; deceit; and oppression. The pleading was signed by Martin H. Levin and listed Archie C. Lamb Jr., both of the Pensacola, Florida law firm of Levin, Middlebrooks, Mabie, Thomas, Mitchell, Papantonio & Lamb, as attorneys for the Wilsons.

On March 15, 1996, the court received a Fax of a letter from Jaffe, the Wilsons' bankruptcy lawyer, to Rita L. Hullett, an attorney for ALFA (Bk Doc. 14) with the original docketed on March 18, 1996 (BK Doc. 15). Jaffe's letter stated:

My clients have informed me that they wish to reject the reaffirmation agreement which they previously signed with Alfa Financial Corporation and which was filed with the court during the last 60 days.

A copy of the letter was also served on "Alfa Financial Corporation, Attn: Allen Foster, P.O. Box 11000, Montgomery, AL 36191–0001."

On April 4, 1996, the ALFA defendants and McCarley filed what is styled *MOTION TO REOPEN CASE* with this court. (BK Doc. 16) The movants contended in their motion that the causes of action asserted by the Wilsons in Marion County CV 96–35 are property of the bankruptcy estate under 11 U.S.C. § 541(a) and that the trustee is the only party who can pursue these claims. The ALFA/McCarley motion also stated "The Wilsons failed to disclose to the Chapter 7 Trustee the cause of action during the bankruptcy case."

The movants asked that the case again be reopened pursuant to 11 U.S.C. § 350(b) "to administer assets, to accord relief to the Debtor, or for other cause."

Additionally on April 4, 1996, the ALFA defendants filed a *NOTICE OF REMOVAL* (AP 96–70520 Doc. 1) which removed the Marion County lawsuit to this court pursuant to 28 U.S.C. § 1452.[2] With filing of the notice, Marion County CV 96–35 became Adversary Proceeding 96–70520 in the Wilsons' Chapter 7 case pursuant to Fed.Rs.Bankr.P. 7001 and 9027. The ALFA defendants asserted that the litigation is a core proceeding in this bankruptcy or, at least a suit "related to" the bankruptcy under the jurisdictional grant found in 28 U.S.C. § 1334(b).[3]

---

**2.** **28 U.S.C. § 1452(a)** provides:

A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

**Fed.R.Bankr.P. 9027** provides that filing a notice of removal with the clerk of the bankruptcy court moves the lawsuit from state or other non-bankruptcy court to the bankruptcy court. The

action of filing notice will halt the state court action, with record transmitted to the bankruptcy court, until and if the bankruptcy court determines that the case should be remanded.

**3.** **28 U.S.C. § 1334(b)** provides:

Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

The third pleading filed by the ALFA defendants on April 4, 1996 was a *MOTION TO DISMISS* (AP Doc. 2 (BK Doc. 18)) asserting that the allegations in the Wilsons' complaint failed to state a claim upon which relief could be granted.

On June 20, 1996, the Wilsons filed a *MOTION TO REMAND OR ALTERNATIVELY TO ABSTAIN AND REMAND* (AP Doc. 6, BK Doc. 22) Their motion contended that the lawsuit should be remanded under 28 U.S.C. § 1452(b) [4] because of an absence of subject matter jurisdiction. Alternatively, the Wilsons asked the court to remand for equitable reasons under 28 U.S.C. § 1452(b) or to voluntarily abstain under 28 U.S.C. § 1334(c)(1). Additionally, the Wilsons' contended 28 U.S.C. § 1334(c)(2) required mandatory abstention by this court.

The ALFA defendants' three pleadings were set for hearing June 20, 1996. At that hearing, the court granted the motion to reopen the Chapter 7 case, and reappointed Joseph W. Hudson as Chapter 7 trustee for the Wilson bankruptcy estate. The notice of removal and the Wilsons' motion for remand and/or abstention were set for hearing July 18, 1996. The ALFA defendants' motion to dismiss was continued until July 18, 1996 as well.

Both parties were given until July 11, 1996 to submit additional briefs if they wished to. Both the ALFA defendants and the Wilsons submitted briefs on that day. The court then took these issues under submission for a decision.

## CONCLUSIONS OF LAW

This court has jurisdiction of the Wilsons' Chapter 7 liquidation case under 28 U.S.C.

The United States district courts delegate this jurisdictional grant to their units, the bankruptcy courts, by standing orders of reference.

4. **28 U.S.C. § 1452(b)** provides:

The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the

§ 1334(a). It has jurisdiction of this adversary proceeding under 28 U.S.C. § 1334(b). Both jurisdictions are extended to this bankruptcy court by the General Order of Reference of the United States District Court, July 16, 1984, as amended July 17, 1994.

## I.

*Causes of action stemming from prepetition acts are property of the bankruptcy estate. The Wilson Chapter 7 trustee is the proper party to pursue such claims on behalf of creditors.*

**A. Any prepetition causes of action—and proceeds—were "legal and equitable" interests of the debtors on the petition date and became property of the bankruptcy estate. The trustee is the proper party plaintiff to pursue the claims.**

11 U.S.C. § 541(a) [5] provides that property of the estate comprises all legal and equitable interests of the debtor on the petition date "wherever located ·and by whomever held".

The complaint in the Wilsons' suit against the ALFA entities and McCarley makes no allegation of wrongful conduct other than that surrounding the June 2, 1994 transaction between McCarley, as ALFA's agent, and the Wilsons. There is no evidence in the pleadings on when the Wilsons' discovered the alleged wrongdoing. So it seems that the bulk, if not all, of the claims in this lawsuit arose before the Wilsons' filed bankruptcy.

Such claims, or causes of action, were property cognizable under 11 U.S.C. § 541(a) and became property of the Wilsons' bankruptcy estate on August 3, 1995 when they

Supreme Court of the United States under section 1254 of this title.

5. **11 U.S.C. § 541(a)** provides in pertinent part:

(a) *The commencement of a case under section 301, 302,* or 303 *of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:*
(1) Except as provided in subsections (b) and (c)(2) of this section, *all legal or equitable interests of the debtor in property as of the commencement of the case....* (emphasis added)

filed their Chapter 7 petition. *See In re Williams,* 197 B.R. 398, 402 (Bankr.M.D.Ga. 1996); *Moore v. Kumer (In re Adam Furniture Industries, Inc.),* 191 B.R. 249, 255 (Bankr.S.D.Ga.1996); and *Neville v. Harris,* 192 B.R. 825, 829–30 (D.N.J.1996).

■ The Wilsons did not list these claims against ALFA and McCarley as assets in their bankruptcy schedules. So Hudson, as Chapter 7 trustee, never had an opportunity to evaluate the litigation on behalf of creditors. The Wilsons did not claim the causes of action (and any proceeds) as exempt to retrieve them from the bankruptcy estate and liquidation process.

Therefore, Hudson, as Chapter 7 trustee for the Wilson creditors, owns the prepetition causes of action and must be substituted as the proper party plaintiff in the lawsuit.

**B. Causes of action arising from postpetition action, if any, belong to the Wilsons. In making those claims, they are subject to any affirmative defenses based on the bankruptcy proceedings that ALFA chooses to mount.**

■ The Wilsons own causes of action, if any, stemming from postpetition transactions with the ALFA entities and McCarley. Any portions of the bankruptcy proceeding may be used by either party in the manner allowed by state law and the Alabama Rules of Court. But this does not create a federal cause of action. *See Dean v. American General Finance, Inc., et al.,* 191 B.R. 463, 466 (M.D.Ala.1996).

## II.

*The equities require this removed state court lawsuit to be remanded to state court in Marion County with the trustee joined as plaintiff.*

**A. *Wilson v. ALFA Companies, et al.* was removed to this bankruptcy court under 28 U.S.C. § 1452. Therefore, the Wilsons' motion to remand under Section 1452(b) is the dispositive issue.**

28 U.S.C. § 1452 gives a party to a lawsuit in a nonbankruptcy court the right to remove the case to the bankruptcy court in the district where the suit is pending if the district court/bankruptcy court has jurisdiction under 28 U.S.C. § 1334. Congress granted the district court system its subject matter jurisdiction in bankruptcy with 28 U.S.C. § 1334.

All that is required procedurally is the filing of a "notice of removal" with the bankruptcy clerk. With that filing, the lawsuit becomes a bankruptcy court adversary proceeding and ceases to exist as a state court suit. Under 28 U.S.C. § 1452(b), the bankruptcy court has equally broad leeway in sending removed cases back where they originated.

■ 28 U.S.C. § 1334(a)[6] grants United States district courts (and by orders of reference, the bankruptcy courts) original and *exclusive* jurisdiction over cases *under* Title 11 of the United States Code (the Bankruptcy Code). The phrase "cases under" in this section refers to the main bankruptcy cases. Debtors like the Wilsons cannot initiate a bankruptcy case anywhere but with the bankruptcy court as a unit of the district court.

However, 28 U.S.C. § 1334(b) also confers original *but not exclusive* jurisdiction to district courts/bankruptcy courts in "civil proceedings" (1) arising under title 11; (2) arising in cases under title 11; and (3) *related to cases* under title 11. Section 1334(e) gives the bankruptcy court where the petition is filed exclusive jurisdiction of property of the estate.

Section 1334(b) "civil proceedings" may further be divided into "core" and "noncore" proceedings in bankruptcy. A core vs. noncore is not dispositive of the court's decision to remand or retain under Section 1452(b). However, the ALFA defendants have argued this lawsuit is a core bankruptcy proceeding and 28 U.S.C. § 157(b)(3) also requires:

The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a

---

**6. 28 U.S.C. § 1334(a)** provides the following:
Except as provided in subsection (b) of this section, the district courts shall have original

and exclusive jurisdiction of all cases under title 11.

*core proceeding* under this subsection or is a proceeding that is otherwise *related to* a case under Title 11.... (emphasis added)

■ A core proceeding is a cause of action arising out of the Bankruptcy Code itself, or which is only possible in the bankruptcy context even if state law impacts or is determinative of the decision. A noncore proceeding can exist independent of the bankruptcy case. A nonexclusive list of core proceedings is included in 28 U.S.C. § 157(b).

The Eleventh Circuit Court of Appeals has held that disputed claims based strictly on state law are non-core proceedings. *Charter Crude Oil Company v. Exxon Company, U.S.A. (In re Charter Company)*, 913 F.2d 1575 (11th Cir.1990) *See also, Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71–72, 102 S.Ct. 2858, 2871–72, 73 L.Ed.2d 598 (1982). Core proceedings are those proceedings which would not exist in law in the absence of the Bankruptcy Code. *See Thomasson v. AmSouth Bank, N.A.*, 59 B.R. 997 (N.D.Ala.1986).

■ *Wilson v. ALFA Companies, et al.* is comprised entirely of state law claims which could, and did, exist independently of the bankruptcy. Although the trustee must be the plaintiff for the prepetition causes of action, he is merely stepping into the shoes of the debtors to pursue claims the Wilsons could have made if they had never filed bankruptcy. Further, liquidation of the claims in state court is not made a core proceeding because the eventual recipient of any proceeds is the estate rather than the Wilsons. The estate only assumes the rights the Wilsons held on the petition date.

It is this court's view that *Wilson v. ALFA Companies, et al.* is a lawsuit "related to" a bankruptcy in the lexicon of Section 1334(b). In *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784 (11th Cir.1990), the Eleventh Circuit Court of Appeals adopted the standard for defining 28 U.S.C. § 1334(b)

"related to" jurisdiction as set out in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3rd Cir.1984):

"The usual articulation of *the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy....* An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) *and which in any way impacts the handling and administration of the bankruptcy estate.*" (emphasis added)

*Lemco Gypsum*, 910 F.2d at 788 (quoting *Pacor*, 743 F.2d at 994). *See also Dean v. American General Finance, Inc., et al.*, 191 B.R. 463, 469 (M.D.Ala.1996).

"Related to" jurisdiction is a wide umbrella in the interpretation placed upon it by the Eleventh and Third Circuits.[7]

So although this lawsuit is not a core bankruptcy proceeding, its outcome could affect the administration of the Wilsons' Chapter 7. *Wilson v. ALFA Companies, et al.* was a proper subject for removal under 28 U.S.C. § 1452(a) because it does come under the Bankruptcy Court's Section 1334(b) "related to" jurisdiction. The Wilsons' argument that this court lacks subject matter jurisdiction is erroneous.

**B. The equities still require that this court remand the case to Marion County Circuit Court under 28 U.S.C. § 1452(b).**

■ Even when the bankruptcy court has subject matter jurisdiction of a removed "related to" case, the court may choose not to exercise that jurisdiction. A bankruptcy court receiving a case removed via Section 1452(a) may retain or remand it based on "any equitable ground" under Section 1452(b).

As this court has stated in previous opinions, use of guidelines first set out in *Browning v. Navarro*, 743 F.2d 1069, 1076 at n. 21 (5th Cir.1984) provide a logical frame for analysis in the Section 1452(b) remand deci-

---

**7.** A more definitive discussion of the subject matter jurisdiction granted district courts and, by reference, the bankruptcy courts can be found in Chief Judge Tamara Mitchell's case, *Royal v. Daihatsu, et al. (In re Royal )*, 197 B.R. 341, 346–48 (Bankr.N.D.Ala.1996). *See also Walker v.*

*Commercial Credit, et al.*, 192 B.R. 260, 266 (M.D.Ala.1996); *Roddam v. Metro Loans, Inc. (In re Roddam )*, 193 B.R. 971 (Bankr.N.D.Ala.1996) and *St. Vincent's Hospital v. Norrell (In re Norrell )*, 198 B.R. 987 (Bankr.N.D.Ala.1996).

sion. *See Thomasson,* 59 B.R. at 1001 and *Traylor v. First Family Financial Services, Inc. (In re Traylor),* 192 B.R. 255, 258 (M.D.Ala.1995).

■ The *Browning* factors (in this court's paraphrase) include the following:

1. Does removal create a forum non conveniens problem—or vice versa?
2. If a civil action has been bifurcated by removal, the entire action should be tried by the same court.
3. Is a state court better able to respond to questions involving state law?
4. Does either court have expertise that would be particularly useful in trying the removed civil action?
5. Will use of two forums result in duplicative and uneconomical use of judicial resources?
6. Consideration should be given to prejudice to the involuntarily removed parties.
7. As in all such determinations, the court should be sensitive to considerations of comity with the state court system.
8. As much as possible, the court's remand decision should lessen the possibility of inconsistent result.

In the Wilson case, the *Browning* factors come down as follows:

**1. Forum non conveniens:** The Marion County Circuit Court sits at Hamilton in Marion County. This Bankruptcy Court for the Western Division of the Northern District of Alabama is based at Tuscaloosa in Tuscaloosa County, but holds court at Jasper in Walker County. The plaintiffs, the Wilsons; and the defendant, McCarley, are residents of Marion County where the state court action was filed. Chapter 7 Trustee Hudson, plaintiff for the prepetition causes of action is based at Jasper, Alabama, where the Bankruptcy Court meets. The ALFA defendants are corporations with their principal places of business in Montgomery, Alabama. One of ALFA's law firms which has filed pleadings in the case is also based in Montgomery, in the Middle District of Alabama. However, the firm practices in bankruptcy courts throughout the Northern District. Additionally, another firm representing ALFA is based in Birmingham, Alabama, as is the attorney for McCarley. Marion County is as accessible to Birmingham as Jasper. Consequently, Marion County is a somewhat more convenient forum for the Wilsons and McCarley; somewhat less convenient for Hudson; and no more inconvenient for ALFA, its counsel; and McCarley's counsel than Jasper.

**2. Bifurcation by removal:** To the extent that the Wilsons have a postpetition claim against the defendants for a state law cause of action, there could be a bifurcation of lawsuits. For the Bankruptcy Court cannot force the Wilsons to try their case here if they wish to be in state court. The fact that their postpetition cause of action might be subject to a defense based in bankruptcy does not require the jurisdiction of the Bankruptcy Court.

Additionally, the Wilsons have made a jury demand in the original petition and presumably will maintain that demand for any postpetition causes of action left them. They have not agreed to a jury trial within the bankruptcy court, if their claims remain in Bankruptcy Court. That situation would require pretrial litigation in Bankruptcy Court with jury trial in the United States District Court after all pretrial motions were resolved, a bifurcation of the action.

**3. Question of state law:** *Wilson v. ALFA Companies, et al.* deals only with questions of state law.

**4. Expertise of the particular court:** There is nothing about this lawsuit that gives either court a particular advantage, since bankruptcy courts, like state courts, routinely handle state contract and business tort law.

**5. Uneconomical use of judicial resources:** Neither the state court nor the Bankruptcy Court have expended a great deal of time to this date. However, it is clear that the most economic use of judicial time is for the same court which becomes familiar with the facts in pretrial to hear the case at trial before a jury.

**6. Prejudice to the involuntarily removed parties:** If anything, this factor would mitigate toward the Bankruptcy Court retaining this case. For the Wilsons, who created this bankruptcy case

and involved ALFA in the bankruptcy/reaffirmation process, are the parties now objecting to being in Bankruptcy Court.

**7. Comity considerations:** But for the Wilsons' closed Chapter 7 bankruptcy, this lawsuit could not have found its way into the federal court system. It involves only claims under state law and there is no base of federal subject matter jurisdiction independent of the bankruptcy case. Bankruptcy courts as a rule should use restraint in retaining such lawsuits, in view of the Eleventh Circuit's holding in *Charter Oil.*

**8. Possibility of inconsistent results:** There is a potential for inconsistency of outcome if this case, and the others like it, are retained in the federal system. For state law must be interpreted to resolve the allegations in the Wilson complaint in a way that goes beyond clear binding precedent by the Alabama Supreme Court. This is not a matter which has been settled by the Alabama courts of appeals and there is a possibility that a federal appellate court could apply the law differently than state appellate courts.

So the equities balance in favor of returning *Wilson v. ALFA Companies, et al.* to Marion County Circuit Court. With Hudson, as Chapter 7 trustee, added as a party/plaintiff to protect the interest of the Wilson creditors, there is no reason for the Bankruptcy Court to retain this state law cause of action.

**C. Abstention should not be an issue after a bankruptcy court chooses to remand pursuant to Section 1452(b). However, if the Wilson litigation were considered under the abstention doctrine, 11 U.S.C. § 1334(c)(2) would require mandatory abstention by the Bankruptcy Court.**

■ The parties have argued opposing versions of whether the Bankruptcy Court should voluntarily abstain from hearing *Wilson v. ALFA Companies, et al.* pursuant to 28 U.S.C. § 1334(c)(1) [8] and whether mandatory abstention is required of this court under 28 U.S.C. § 1334(c)(2).[9]

As Chief Bankruptcy Judge Mitchell pointed out in *Royal v. Daihatsu, et al. (In re Royal)*, 197 B.R. 341 (Bankr.N.D.Ala.1996), there are two schools of thought on whether the 28 U.S.C. § 1334(c) abstention provisions apply to cases removed to bankruptcy court under 28 U.S.C. § 1452.

> Section 1334(c)(2) requires that an action "is commenced, and can be timely adjudicated, in a State forum" before abstention is mandatory. One line of decisions interprets this language as meaning that for mandatory abstention to be applicable, there must be two cases on the same issues pending concurrently, one before the federal court and one before a state court. These courts reason that where a case is removed from state court to federal court, nothing will typically remain pending in state court. Therefore, these courts conclude that there could be no timely adjudication in state court of a removed case because nothing is left pending in state court to be adjudicated and, thus, § 1334(c)(2) can not be applicable. Other courts hold that the language of § 1334(c)(2) does not necessarily require two pending cases. These courts reason that abstention, or abstention coupled with remand, transfers the removed case back to the state court so it can be timely adjudicated there thus satisfying all the precepts of § 1334(c)(2).

*In Royal,* 197 B.R. at 350–51.

This court takes the first view. Removal of a lawsuit under Section 1452 is legally and

---

**8. 28 U.S.C. § 1334(c)(1)** provides:
Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

**9. 28 U.S.C. § 1334(c)(2)** provides:
Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

conceptually distinct from the doctrines of voluntary and mandatory abstention under Section 1334(c), although the same equitable factors can impact both decisions.

Removal of a lawsuit from state court to a federal bankruptcy court under 28 U.S.C. § 1452(a) leaves nothing pending in state court. Section 1452 allows a removal of state law "related to" cases to bankruptcy court as complete as 28 U.S.C. § 1441 [10] allows to the United States district courts for state court cases which have an independent base of federal jurisdiction.

Once the case is removed to bankruptcy court under Section 1452, there is nothing left in state court for the bankruptcy court to abstain from hearing. Further, abstention alone will not provide the procedural mechanism to physically or legally put the case back in state court.

It is this court's view that the only procedurally appropriate means of returning the case to state court is remand under Section 1452(b) and that remand under Section 1452(b) is the only thing required. An abstention consideration is a redundancy after the Section 1452(b) remand decision has been made.

Nevertheless, if the abstention provisions of Section 1334(c) were material in the Wilson case, mandatory abstention would be required by 28 U.S.C. § 1334(c)(2). Bankruptcy Judge Benjamin Cohen stated the requirements for such succinctly in *Roddam v. Metro Loans, Inc., et al. (In re Roddam)*, 193 B.R. 971 (Bankr.N.D.Ala.1996).

In a removal case similar to this one, Judge Cohen found that mandatory absten-

tion would be required if the suit were considered under Section 1334(c)(2):

> All the criteria for mandatory abstention have been met. Timely motions were filed for remand or abstention by Mr. Roddam and by Mr. Roddam's bankruptcy trustee. The lawsuit is based on a state law cause of action. The lawsuit is related to a bankruptcy case but did not arise in a bankruptcy case or otherwise arise under title 11. The lawsuit could not have been commenced in either the district court or the bankruptcy court absent 28 U.S.C. § 1334(b). The lawsuit has been commenced in a state court of appropriate jurisdiction. Because the lawsuit can be tried no quicker in this Court than it can in the state court, the conclusion is unavoidable that the lawsuit "can be timely adjudicated" in the state court.

*In re Roddam*, 193 B.R. at 979–81. *See also Vail v. Life Insurance Company of Alabama and Merchants and Farmers Bank (In re Vail)*, Bankruptcy Case No. 94–70220–BGC–13, AP No. 96–79245A, slip op. (Bankr. N.D.Ala. July 18, 1996), *aff'd by* No. 96–C–2111–W slip op. (N.D.Ala. Sept. 17, 1996).

These same factors comprising mandatory abstention under Section 1334(c)(2) are also present in the Wilson case. If the court had not already determined to remand under Section 1452(b), Section 1334(c)(2) would require mandatory abstention. The court will not discuss voluntary abstention under Section 1334(c)(1) since that cannot be an issue when mandatory abstention is required.

10. **28 U.S.C. § 1441** provides:

(a) *Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter [28 USCS §§ 1441 et seq.], the citizenship of defendants sued under fictitious names shall be disregarded.*

(b) *Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties*

*or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.*

Defendants may remove cases from state to U.S. district courts under Section 1441 where federal "arising under" or diversity jurisdiction pursuant to 28 U.S.C. § 1331 exists. 28 U.S.C. § 1452 is a removal statute which can bring a suit which does not meet the jurisdictional requirements of Section 1331 into the federal system if it can be shown the suit is at least "related to" a bankruptcy case, past or present.

## CONCLUSION

28 U.S.C. § 1452(b) states that a removed case may be transferred back to state court for any equitable reason. The court's analysis of the factors involved in this case show that the equities require **REMAND** of *Wilson v. ALFA Companies, et al.* to Marion County Circuit Court with Chapter 7 Trustee Joseph W. Hudson joined as a party/plaintiff.

Any causes of action in the lawsuit based on pre-bankruptcy transactions became property of the Wilson Chapter 7 bankruptcy estate on August 3, 1995 when the debtors filed bankruptcy. As such, Hudson is the proper party to evaluate and pursue these claims on behalf of the Wilson creditors.

Causes of action, if any, based on postpetition transactions belong to the Wilsons.

The Wilsons' *MOTION TO REMAND* must be **GRANTED,** and ALFA's objection to remand must be **OVERRULED.** The ALFA defendants' *MOTION TO DISMISS* (AP Doc. 2) will remain pending for adjudication by the state court after remand.

An order, consistent with these findings pursuant to Fed.R.Civ.P. 52 (as applied in bankruptcy by Fed.R.Bankr.P. 7052), will be entered separately.